■ ELENA ALICEA RODRIGUEZ, as Administratrix of the Estate of JUAN RODRIGUEZ, Deceased, et al., Appellants, v STUART SAAL, M.D., et al., Defendants, and NEW YORK ORGAN DONOR NETWORK, Respondent. [841 NYS2d 232]—

Order, Supreme Court, New York County (Joan B. Carey, J.), entered on or about December 19, 2005, which, to the extent

appealed from as limited by the briefs, denied plaintiff's motion for an extension of time to effect service upon certain of the defendants and granted the cross motion by defendant New York Organ Donor Network (NYODN) to dismiss the complaint against it on the ground of untimeliness, unanimously modified, on the law, the dismissal vacated, the cross motion denied, and otherwise affirmed, without costs. The complaint against NYODN is reinstated, and the matter remanded for further proceedings.

In February 2002, plaintiff's decedent Juan Rodriguez underwent a kidney transplant procedure at defendant Rogosin Institute, with a replacement cadaveric kidney supplied by defendant NYODN. Four and a half weeks later, a kidney biopsy was performed at defendant New York Presbyterian Hospital, which revealed lesions in the new kidney. Neither plaintiff nor her decedent was informed by Presbyterian of this finding.

After several visits to Presbyterian for treatment to the implanted kidney, plaintiff was advised that the kidney had been rejected and needed to be removed. A nephrectomy was performed on the kidney in September, 2002, but plaintiff maintains that neither she nor decedent was informed of the prior biopsy results at that time.

The pathology examination report of the donor kidney, dated September 3, 2002, showed extensive tumor infiltration of the organ. A consulting physician's examination of the kidney four days later determined these tumors to be evidence of lymphoma.* Decedent died on September 19, 2002.

On or about October 24, 2002, plaintiff received the autopsy report on decedent. It noted that decedent had metastatic undifferentiated malignant neoplasm (cancerous tumors) in a majority of his major organs. Plaintiff claims this was the first time she learned the transplanted kidney had been cancerous.

Plaintiff commenced this action on September 20, 2004, by filing the summons and complaint with the Clerk of the court. The next day, plaintiff's counsel sent 40 copies to a process serving agency for service. On or about February 1, 2005, counsel learned that the process serving agency claimed it never received the copies for service; hence, defendants were never served. Plaintiff immediately served some of the defendants, including NYODN, the next day. Some defendants, however, were still not served at the time of the IAS court's decision on the motions forming the basis of this appeal.

---

* The consulting physician's report also noted that the donor's other kidney, which was transplanted into a second recipient, also exhibited evidence of lymphoma. The other recipient subsequently died of the disease.

On February 4, 2005, plaintiff moved pursuant to CPLR 306-b for an extension of time to make service upon all defendants. Those defendants who had been served cross-moved to dismiss on the ground that they had not been served within the required 120 days after the filing of the summons and complaint. Additionally, NYODN cross-moved to dismiss the complaint against it as barred by the 2½-year statute of limitations for medical malpractice actions (CPLR 214-a).

The IAS court granted plaintiff's motion as to all defendants who had been served, albeit beyond the 120-day time frame. With respect to those defendants who had not as yet been served, the court denied plaintiff's motion, finding no evidence they had been put on notice with respect to plaintiff's claims, thus creating an "inference of substantial prejudice."

The court further granted NYODN's cross motion to dismiss the complaint as time-barred, since the action was commenced more than 2½ years after the alleged malpractice. The court rejected plaintiff's contention that NYODN's failure to provide adequate organ screening sounded in negligence rather than medical malpractice.

"Conduct may be deemed malpractice, rather than negligence, when it 'constitutes medical treatment or bears a substantial relationship to the rendition of medical treatment by a licensed physician' " (*Scott v Uljanov*, 74 NY2d 673, 674-675 [1989], quoting *Bleiler v Bodnar*, 65 NY2d 65, 72 [1985]). However, when the complaint does not allege negligence in furnishing medical treatment to a patient, but rather the failure of a medical provider in fulfilling a different duty, the claim sounds in negligence (*see Scott v Uljanov*, 74 NY2d 673 [1989], *supra*).

The basic claim here, although inartfully pleaded, involves the adequacy of NYODN's testing and screening procedures in harvesting and providing organs for transplant. Despite plaintiff's allegations in the amended complaint lumping NYODN with the other defendants who caused injury to decedent by reason of, inter alia, their "recklessness, negligence, carelessness and medical malpractice" in connection with the "care and treatment" provided to plaintiff's decedent, it is undisputed that NYODN did not provide any type of medical treatment directly to decedent. In order for a cause of action sounding in medical malpractice to be maintained, the claim must be predicated upon the existence of an express or implied physician-patient relationship (*McKinney v Bellevue Hosp.*, 183 AD2d 563, 564 [1992]). "The relationship is created when the professional services of a physician are rendered to and accepted by another person for the purposes of medical or surgical treat-

ment" (*Lee v City of New York*, 162 AD2d 34, 36 [1990], *lv denied* 78 NY2d 863 [1991]).

The issue here, as it concerns NYODN, does not involve questions of medical competence or treatment provided *to* decedent. Instead, it turns on NYODN's duties as a collection and distribution center of donated organs. Simply put, the issue to be resolved is whether NYODN breached its duty to exercise due care in its organ collection activities and whether this duty "in any measure depend[s] on an analysis of the medical treatment furnished" to decedent (*Weiner v Lenox Hill Hosp.*, 88 NY2d 784, 788 [1996]).

In *Weiner*, the plaintiff's decedent received a number of blood transfusions at defendant hospital which concluded in January 1985. Eight units of blood came from the hospital's blood bank, and seven units from New York Blood Center. At least one of the units was contaminated with the HIV virus. The decedent was diagnosed with AIDS in May 1990 and died of AIDS related illness in June. An action for negligence was commenced in March 1991, alleging inter alia, that the hospital was negligent in failing to adequately screen and test the blood used in the transfusions. The hospital alleged the claim was time-barred under the 2½-year medical malpractice statute of limitations. Recognizing that medical malpractice is a form of negligence and the distinction between the two "is a subtle one" (*id.* at 787), the Court of Appeals, in affirming the trial court's order striking the statute of limitations defense, held that the claim against the hospital did not involve the plaintiff's medical treatment and hence sounded in negligence, not medical malpractice. The Court initially reaffirmed the concept that in general, while it could be said that a hospital is always furnishing medical care to patients, "not every act of negligence toward a patient would be medical malpractice" (*Bleiler*, 65 NY2d at 73). For a claim to sound in medical malpractice, the conduct must constitute "medical treatment or bear[ ] a substantial relationship to the rendition of medical treatment by a licensed physician" (*id.* at 72). However, where "the gravamen of the complaint is not negligence in furnishing medical treatment to a patient, but the hospital's failure in fulfilling a different duty," the complaint sounds in negligence (*id.* at 73).

Defendant incorrectly contends that this is a medical malpractice case because testimony from physicians and other medical providers, and expert testimony of a medical nature will, of necessity, be required to assist the jury in understanding the procedures followed in the testing and screening of both donors and the donated organs. However, "the difference between a

medical malpractice and negligence action could never be made to turn on whether expert testimony is required to establish liability" (*Payette v Rockefeller Univ.*, 220 AD2d 69, 73 [1996]). Where the acts of alleged malpractice do not fall "within the competence of a lay jury to evaluate, it is incumbent upon the plaintiff to present expert testimony in support of the allegations to establish a prima facie case" (*Keane v Sloan-Kettering Inst. for Cancer Research*, 96 AD2d 505, 506 [1983]). But where such cases rely on evidence readily understandable to an average juror, expert testimony is not necessary (*see Mack v Lydia E. Hall Hosp.*, 121 AD2d 431 [1986], where plaintiff relied on the doctrine of res ipsa loquitur to prove medical malpractice). Moreover, expert testimony is often necessary to establish liability in the ordinary negligence case. In short, even though expert testimony from medical professionals may be necessary to establish certain elements of a plaintiff's claim, it does not follow that the action sounds in medical malpractice (*Payette*, 220 AD2d at 74), particularly since there is no claim of a physician-patient relationship between plaintiff and NYODN (*see McKinney v Bellevue Hosp.*, 183 AD2d 563 [1992], *supra*).

As a result, plaintiff's cause of action against NYODN sounds in negligence and was thus timely made (CPLR 214 [6]).

Plaintiff's wrongful death claim is also timely pursuant to EPTL 5-4.1, which requires commencement of an action within two years of the date of death. The decedent died on September 19, 2002. September 19, 2004 fell on a Sunday, and thus commencement of this action the next day was timely (General Construction Law § 25-a [1]).

The IAS court properly exercised its discretion in denying plaintiff's motion for an extension of time pursuant to CPLR 306-b to serve certain defendants. Some of those defendants had still not been served and there was no evidence that they had been put on notice of plaintiff's claims against them (*see Leader v Maroney, Ponzini & Spencer*, 97 NY2d 95, 107 [2001]). There is no indication that plaintiff subsequently learned of the whereabouts of the individual defendants or the identity of the institutional defendant in question. Concur—Andrias, J.P., Friedman, Buckley, Sweeny and Catterson, JJ.