No. 15-1148 -     *Joyce Minnich, as Executrix of the Estate of Andrew A. Minnich, and Joyce E. Minnich, individually v. MedExpress Urgent Care, Inc. – West Virginia d/b/a MedExpress Urgent Care – South Charleston*

**FILED**

**February 14, 2017**

released at 3:00 p.m.
RORY L. PERRY, II CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

Davis, Justice, dissenting:

I respectfully dissent in this matter as I believe that the majority opinion ignores the facts of record in favor of a narrow construction of the allegations set forth in the complaint. This is a tragic case involving, in part, a serious head injury sustained by a seventy-one-year-old man as a result of a fall while on MedExpress premises. It is alleged, and experts have opined, the resulting head injury substantially contributed to his rapid decline and ultimate death.

The majority found that Mr. Minnich's fall occurred while he was attempting to comply with the directive of a health care provider to sit on an examination table, and thus, the injuries sustained as a result of the fall occurred in the course of evaluation at MedExpress. My review of the record suggests that this characterization of the underlying events is factually inaccurate and wrongly portrays what actually transpired.[1]

---

[1] I am also concerned that the circuit court's order emphasizing "continuity of care" and fall risk potential improperly focused on these medical terms of art rather than on the overarching facts indicative of simple negligence in this case.

1

The complaint alleged that a MedExpress employee took Mr. and Mrs. Minnich to an exam room, instructed Mr. Minnich to get on the exam table, and then left the room. The complaint adroitly avoided pleading a medical professional liability claim. Instead, the action was framed as a simple negligence or premises liability claim. If the matter were before this Court on review of a motion to dismiss pursuant to Rule 12(b)(6) of the West Virginia Rules of Civil Procedure, we would properly consider only the allegations of the complaint and closely parse whether it was well-pled. However, this appeal arises out of a summary judgment determination following extensive factual development. I cannot place blinders on so as to ignore the facts of record.

The factual development through requests for admissions and depositions reveals that MedExpress has, at every stage of the litigation, denied that Mr. Minnich was directed by a medical assistant to get on the exam table. MedExpress, in its Answer, denied any staff member directed Mr. Minnich to get on the exam table. MedExpress asserted that it was not foreseeable that Mr. Minnich would get on the exam table without direction or assistance. In response to requests for admission, MedExpress repeatedly stated that it objected to any representation that Mr. Minnich was directed to get on the exam table. The staff person who escorted Mr. and Mrs. Minnich to the exam room testified at deposition that she walked into the room, "flipped on" the light, and instructed Mr. Minnich to have a seat. Not only did she not tell Mr. Minnich to get on the exam table, in accordance with her

2

MedExpress training, she has never instructed any patient to get on an exam table.

The non-employee Incident Report completed by Stephani Vealey, the MedExpress Manager, characterized the incident type as "*slip and fall*". (Emphasis added). She further indicated that Mr. and Mrs. Minnich were taken to the exam room, and the staff person told Mr. Minnich to "have a seat." According to Ms. Vealey, "Next thing we know the patient's wife is on the floor screaming for help." Ms. Vealey further indicated: "No faulty equipment – however, the foot stool on the exam room table was not completely pull out (sic) when patient went to step on it." Ms. Vealy stated at deposition that she observed the exam table step had not been fully extended.

The remarks of Ms. Vealey on the Incident Report are critical when considered in connection with examination room requirements. The staff person testified in deposition regarding MedExpress requirements for exam room preparation. According to the medical assistant, in order to prepare the room for a patient, "you clean the exam table, wipe it down, put down new paper, make sure the foot stool is out." At deposition, the medical assistant conceded that the failure to have the footstool fully extended constituted a safety hazard.

This Court has held,

> "The West Virginia Medial Professional Liability Act, codified at W. Va. Code § 55-7B-1 *et seq.*, applies only to

claims resulting from the death or injury of a person for any tort or breach of contract based on health care services rendered, or which should have been rendered, by a healthcare provider or health care facility to a patient. It does not apply to other claims that may be contemporaneous to or related to the alleged act of medical professional liability." Syllabus point 3, *Boggs v. Camden-Clark Memorial Hospital Corp.*, 216 W. Va. 656, 609 S.E.2d 917 (2004).

Syl. pt. 1, *Manor Care, Inc. v. Douglas*, 234 W. Va. 57, 763 S.E.2d 73 (2014). In *Manor Care*, we rejected the argument of nursing home entities that the Medical Professional Liability Act ("MPLA") provided the exclusive remedy for claims brought arising in connection with nursing home care. In discussing that the MPLA applies only to actions based upon health care services rendered or which should have been rendered we remarked,

> [i]t has been correctly observed that "[t]he fact that the alleged misconduct occurs in a healthcare facility does not, by itself, make the claim one for malpractice. Nor does the fact that the injured party was a patient at the facility or of the provider, create such a claim." *Madison Ctr., Inc. v. R.R.K.*, 853 N.E.2d 1286, 1288 (Ind.Ct.App.2006). *See also Atlanta Women's Health Group v. Clemons*, 287 Ga. App. 426, 651 S.E.2d 762 (2007) ("Of course, not every suit which calls into question the conduct of one who happens to be a medical professional is a medical malpractice action. We must look to the substance of an action against a medical professional in determining whether the action is one for professional or simple negligence."); *Perkins v. Susan B. Allen Mem'l Hosp.*, 36 Kan.App.2d 885, 146 P.3d 1102, 1107 (2006) ("Not every claim for negligence against a healthcare provider constitutes malpractice."); *Draper v. Westerfield*, 181 S.W.3d 283, 290

4

(Tenn.2005) ("Cases involving health or medical entities do not automatically fall within the medical malpractice statute.") Thus, "when the complaint does not allege negligence in furnishing medical treatment to a patient, but rather the failure of a medical provider in fulfilling a different duty, the claim sounds in negligence." *Rodriquez v. Saal*, 43 A.D.3d 272, 841 N.Y.S.2d 232, 235 (2007).

*Riggs v. West Virginia Univ. Hosps., Inc.*, 221 W. Va. 646, 665-66, 656 S.E.2d 91, 110-11 (2007) (per curiam) (Davis, C.J., concurring).

234 W. Va. at 73, 763 S.E.2d at 89. (footnote and additional citation omitted).

Significantly, the complaint in the case *sub judice* contains no allegations that MedExpress breached the standard of care in providing health care services to Mr. Minnich. Indeed, there are no allegations that any health care services were provided to Mr. Minnich. The clear import of the complaint is that, following intake, Mr. Minnich was escorted to an exam room to await a provider who would render health care services to him. There are no claims asserted against any physicians, nurses, or medical assistants, nor are there any assertions that health care services were improperly provided to Mr. Minnich.

Unfortunately, the majority avoids the facts when it stresses, "the determination of whether a cause of action falls within the MPLA is based upon the factual circumstances giving rise to the cause of action, *not the type of claim asserted*." (Emphasis supplied in majority opinion). The majority proceeds to focus on a narrow reading of the allegations of

5

the complaint. Where the majority falls short is in their lack of consideration of the voluminous discovery conducted in this case and the factual circumstances developed in the cause of discovery.

The issue in this case as pled, and as developed, is whether the fall sustained by Mr. Minnich occurred in the course of his receipt of health care services at MedExpress. My review of the record compels me to conclude that the conduct that forms the basis for this litigation is not rooted in the provision of medical care. Rather, the core of the claim sounds in ordinary negligence – specifically, premises liability. The claim simply does not turn on medical questions. Even the MedExpress Center Manager applied basic common sense when she referred to the incident as a "slip and fall." Surely, no specialized medical skill or training is required to fully extend a footstool on an exam table. It confounds common sense to suggest that a physician expert is required to opine on the medical professional standard of care for extending a footstool–a matter wholly unrelated to specialized medical skill or training. A jury should be fully capable, without the assistance of a medical professional expert, of considering whether there was negligence in the failure to have the exam table footstool fully extended prior to escorting a patient into an exam room. The basis for the Minniches' claim is the failure of MedExpress to maintain a safe environment by exposing its customer to defectively maintained equipment in the form of a dangerous, partially extended footstool. Here, the medical assistant plainly testified there was no rendering of

6

medical services with respect to escorting Mr. Minnich to an exam room to await the rendering of health care services. She simply showed Mr. and Mrs. Minnich to the exam room, "flipped on the light," and told Mr. Minnich to have a seat. Such acts do not constitute the delivery of medical services. I view this setting no differently than if Mr. Minnich was seated in the exam room chair and was injured when the chair collapsed.

Because I do not agree with the majority's interpretation and application of the law and the facts of record, I dissent.