■ JAMES A. YAMIN, as Administrator of the Estate of EMILIE YAMIN, Deceased, Appellant, v ASHOK BAGHEL et al., Respondents. [728 NYS2d 520] —Carpinello, J. Appeal from an order of the Supreme Court (Canfield, J.), entered November 28, 2000 in Rensselaer County, which, *inter alia*, granted defendants' motions for summary judgment dismissing the complaint.

On March 6, 1998, plaintiff's decedent, Emilie Yamin, then 89 years old, was admitted to defendant Highgate Manor of Rensselaer, Inc., a skilled nursing facility in Rensselaer County, to undergo rehabilitation for a fractured left hip. Defendant Capital Healthcare Associates, P. C., of which defendant Ashok Baghel was a member, had contracted to provide physician services to patients at Highgate. Baghel was Yamin's attending physician while in that facility. On March 23, 1998, Yamin fell and fractured her right hip while attempting to go from her bed to the bathroom without assistance. She thereafter commenced this medical malpractice action and, upon her death, her son was substituted as plaintiff. After joinder of is-

sue and discovery, all parties moved for summary judgment, with defendants seeking dismissal of the complaint and plaintiff seeking judgment on the issue of liability. Supreme Court granted defendants' motions, dismissed the complaint and denied plaintiff's cross motion. Plaintiff appeals and we affirm.

Plaintiff's malpractice claim focuses on the adequacy of defendants' assessment of Yamin's risk of falling and defendants' failure to require physical restraints while Yamin was in bed. Determining whether defendants breached their duty to exercise reasonable care in safeguarding Yamin requires a consideration of the standard of care customarily exercised in similar facilities in the community which, in turn, calls for the production of expert testimony (see, Smee v Sisters of Charity Hosp., 210 AD2d 966; Zellar v Tomiki Community Hosp., 124 AD2d 287). As pointed out by defendants' experts in their affidavits submitted in support of defendants' motions, the standard of care with regard to the use of physical restraints in facilities such as Highgate must be assessed in light of Federal and State laws, rules and regulations which generally establish the right of a facility resident to be free from restraints that are not required to protect his or her safety (see, e.g., 42 USC § 1395i-3 [c] [1] [A] [ii]; Public Health Law § 2803-c [3] [h]; 42 CFR 483.13 [a]; 10 NYCRR 415.3 [c] [1] [vii]). Thus, physical restraints may be used on a facility resident in New York "only to protect the health and safety of the resident" and "only in unusual circumstances * * * after all reasonable less restrictive alternatives have been considered and rejected for reasons related to the resident's well-being * * *. Less restrictive measures that would not clearly jeopardize the resident's safety shall not be rejected before a trial to demonstrate whether a more restrictive restraint would promote greater functional independence" (10 NYCRR 415.4 [a] [2] [i], [iii]). Physical restraints are "any manual method or physical or mechanical device, material or equipment attached or adjacent to the resident's body that the individual cannot remove easily which restricts freedom of movement or normal access to one's body" (10 NYCRR 415.4 [a] [2]).

Upon her admission to Highgate, Yamin underwent a number of assessments regarding her physical and mental conditions, including a fall assessment. Although she was found to be a high risk for falling, she was also found to have both short and long term memory and to be alert, mentally coherent and cooperative, with good safety awareness. While she was occasionally confused regarding time and place, she was easily

reoriented by facility staff. In addition to physical therapy, she was provided with assistance when changing from one position to another and while ambulating and performing other activities. Facility residents with a high risk of falling were monitored frequently, and Yamin was provided with a call button and instructed in its use. The record reveals that Yamin complied with the requirement that she call for assistance. In fact, several hours before her fall, she called for assistance to go to bed. There is nothing in the medical records to indicate that she had attempted unassisted ambulation prior to her fall.

Based upon their review of the medical records and transcripts of deposition testimony, defendants' experts concluded that the assessment of Yamin and the absence of physical restraints did not deviate from accepted medical practice. Highgate's expert noted that the less restrictive requirement of the call button, instruction in its use and frequent monitoring were appropriate and both experts opined that the use of physical restraints prior to Yamin's fall would have violated Federal and State law. We conclude, therefore, that defendants met their burden as parties seeking summary judgment (*see, Alvarez v Prospect Hosp.*, 68 NY2d 320).

In opposition to the motions, plaintiff submitted the affidavit of a physician who specializes in rehabilitative medicine and is licensed to practice in Maryland and California. There is no evidence in the record, however, to demonstrate this expert's familiarity with the standard of care customarily practiced in New York facilities similar to Highgate. Even more egregious is the absence in the expert's affidavit of any consideration of the limits imposed by the Federal and State statutory and regulatory provisions which govern the use of restraints in facilities such as Highgate. Moreover, the expert's conclusion that these statutes required defendants to make a specific assessment of Yamin's need for restraints has no support in the statutory language itself (*see*, 42 USC § 1395i-3 [c] [1] [A] [ii]; Public Health Law § 2803-c [3] [h]). Although the expert identified what he believed to be a number of deficiencies in defendants' assessment and treatment of Yamin, including the failure to use full-length side bed rails, the expert failed to offer any explanation as to how Yamin's fall would have been prevented if these alleged deficiencies had not occurred. Absent, therefore, is the required nexus between the alleged malpractice and Yamin's injury (*see, Douglass v Gibson*, 218 AD2d 856, 858). Accordingly, we conclude that the expert's affidavit was insufficient to defeat defendants' motions (*see generally, Rossi v*

*Arnot Ogden Med. Ctr.*, 268 AD2d 916, 918, *lv denied* 95 NY2d 751). Plaintiff also relied on allegations of family members that Yamin attempted to get out of bed during their visits with her, which they reported to Highgate staff. There is no evidence, however, that prior to her fall, Yamin attempted to ambulate without anyone in the room to assist her. Accordingly, we perceive no error in Supreme Court's order granting summary judgment to defendants.

Cardona, P. J., Mercure, Peters and Spain, JJ., concur. Ordered that the order is affirmed, with one bill of costs.