■ EILEEN D'ELIA, Appellant, v MENORAH HOME AND HOSPITAL FOR THE AGED AND INFIRM, Respondent. [859 NYS2d 224]—

In an action, inter alia, to recover damages for personal injuries, etc., the plaintiff appeals from an order of the Supreme Court, Kings County (Balter, J.), dated August 15, 2006, which denied her motion, in effect, for summary judgment on the issue of liability, and granted the defendant's cross motion for summary judgment dismissing the complaint.

Ordered that the order is modified, on the law, by deleting the provision thereof granting that branch of the defendant's cross motion which was for summary judgment dismissing the first cause of action insofar as it is based on a claim of ordinary negligence involving the defendant's alleged failure to use any available safety devices or tools to protect the decedent from the risk of falls during a stated five-hour period and substituting therefor a provision denying that branch of the defendant's cross motion; as so modified, the order is affirmed, without costs or disbursements.

The plaintiff's decedent was 91 years old and suffering from serious medical conditions, including congestive heart failure, when she was admitted to the defendant Menorah Home and Hospital for the Aged and Infirm (hereinafter Menorah Home) in September 2003. Her daughters visited regularly and, during the last weeks of her life, hired a companion to spend the day with her and night assistants to stay with her through the night in case she needed anything. After the decedent fell once in February 2004 while trying to go to the bathroom without assistance, Menorah Home identified her as being at risk for falls.

On the evening of March 27, 2004 one of the decedent's daughters decided to spend the night with her mother, rather than hiring an attendant, but was directed by Menorah Home staff to leave at about 2:00 o'clock the next morning. After receiving assurances that they would give her mother special care, she left. About five hours later, the decedent's roommate discovered her lying on the floor in the middle of the room,

where she apparently had fallen while trying to reach the bathroom without assistance. She was transferred to a hospital where she was found to have a broken left hip, and died later that day of renal and heart failure.

The plaintiff, as administrator of the decedent's estate, commenced this action alleging, inter alia, that Menorah Home negligently permitted the decedent to remain unattended in a bed without restraints or other devices to prevent her from falling out of her bed, and that the fall resulted in injuries that caused or hastened her death. Following discovery, the plaintiff moved, in effect, for summary judgment on the issue of liability and Menorah Home cross-moved for summary judgment dismissing the complaint, relying on the affirmation of an expert in geriatric care who opined, among other things, that Menorah Home did not deviate from the professional standard of care in not using restraints, and did not cause the decedent's death or any other injury. The plaintiff did not submit an expert affidavit, but relied on the deposition testimony of Menorah Home's supervising nurse that a range of tools less invasive than restraints is available to safeguard a patient at risk for falls and can be directed without a physician's approval, but that none had been used to protect the decedent. The Supreme Court, finding that the negligence claim sounds in medical malpractice, dismissed the first cause of action in its entirety because the plaintiff had not submitted expert testimony opining that Menorah Home had deviated from the accepted standard of care.

Since "medical malpractice is simply a form of negligence, no rigid analytical line separates the two" (*Scott v Uljanov*, 74 NY2d 673, 674 [1989]; *see Weiner v Lenox Hill Hosp.*, 88 NY2d 784, 787-788 [1996]). A hospital or medical facility has a general duty to exercise reasonable care and diligence in safeguarding a patient, based in part on the capacity of the patient to provide for his or her own safety (*see Hendrickson v Hodkin*, 276 NY 252, 258-259 [1937]; *Papa v Brunswick Gen. Hosp.*, 132 AD2d 601, 603 [1987]). "The distinction between ordinary negligence and malpractice turns on whether the acts or omissions complained of involve a matter of medical science or art requiring special skills not ordinarily possessed by lay persons or whether the conduct complained of can instead be assessed on the basis of the common everyday experience of the trier of the facts" (*Miller v Albany Med. Ctr. Hosp.*, 95 AD2d 977, 978 [1983]; *see Halas v Parkway Hosp.*, 158 AD2d 516, 516-517 [1990]).

Generally, a claim will be deemed to sound in medical mal-

practice "when the challenged conduct 'constitutes medical treatment or bears a substantial relationship to the rendition of medical treatment by a licensed physician' " (*Weiner v Lenox Hill Hosp.*, 88 NY2d at 788; *see Bleiler v Bodnar*, 65 NY2d 65, 72 [1985]; *Rey v Park View Nursing Home*, 262 AD2d 624, 626-627 [1999]; *Payette v Rockefeller Univ.*, 220 AD2d 69, 71-72 [1996]; *Halas v Parkway Hosp.*, 158 AD2d 516 [1990]). Thus, when the complaint challenges the medical facility's performance of functions that are "an integral part of the process of rendering medical treatment" and diagnosis to a patient, such as taking a medical history and determining the need for restraints, it sounds in medical malpractice (*Scott v Uljanov*, 74 NY2d at 675; *see Caso v St. Francis Hosp.*, 34 AD3d 714, 714-715 [2006]; *Rey v Park View Nursing Home*, 262 AD2d at 626-627; *Smee v Sisters of Charity Hosp. of Buffalo*, 210 AD2d 966, 967 [1994]; *Fox v White Plains Med. Ctr.*, 125 AD2d 538 [1986]). By contrast, when the "gravamen of the action concerns the alleged failure to exercise ordinary and reasonable care to insure that no unnecessary harm befell the patient," the claim sounds in ordinary negligence (*Papa v Brunswick Gen. Hosp.*, 132 AD2d 601, 603 [1987]; *see Weiner v Lenox Hill Hosp.*, 88 NY2d at 788; *Edson v Community Gen. Hosp. of Greater Syracuse*, 289 AD2d 973 [2001]; *Halas v Parkway Hosp.*, 158 AD2d 516 [1990]).

In this case, the first cause of action based on negligence encompasses allegations of medical malpractice and ordinary negligence. Menorah Home established its prima facie entitlement to summary judgment with respect to the specific allegations sounding in medical malpractice, with an expert's affidavit opining that the decedent was gravely ill in the days leading up to her death, and thus was not at "imminent risk" of falling, for which restraints would have been medically advised or required. In opposition, the plaintiff failed to raise a triable issue of fact, as she did not submit an expert affidavit opining that Menorah Home deviated from accepted medical practice by not using restraints (*see Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]; *Vera v Soohoo*, 41 AD3d 586, 587 [2007]). Thus, that portion of the first cause of action that rests on allegations that Menorah Home's committed medical malpractice by failing to use restraints was properly dismissed.

However, to the extent the first cause of action alleges that Menorah Home failed to use any available safety devices or tools to protect the frail, elderly decedent from the risk of falls during the five hours that her daughters and private caretakers were not present, that portion of the first cause of action sounds in ordinary negligence, as it does not involve specialized knowl-

edge of medical science or diagnosis and instead seeks to hold Menorah Home liable for failing "to exercise reasonable care to insure that no unnecessary harm befell the patient" (*Papa v Brunswick Gen. Hosp.,* 132 AD2d at 603; *see Edson v Community Gen. Hosp. of Greater Syracuse,* 289 AD2d 973, 974 [2001]; *Halas v Parkway Hosp.,* 158 AD2d at 516-517; *Papa v Brunswick Gen. Hosp.,* 132 AD2d 601 [1987]; *White v Sheehan Mem. Hosp.,* 119 AD2d 989 [1986]). In opposition to Menorah Home's prima facie showing that it exercised reasonable care in supervising the decedent, the plaintiff submitted evidence, including the supervising nurse's deposition testimony, sufficient to raise a question of fact as to whether Menorah Home negligently failed to implement available precautions to protect the decedent from a foreseeable risk of falling. Thus, Menorah Home was not entitled to summary judgment dismissing the first cause of action in its entirety.

The plaintiff's remaining contentions are without merit. Lifson, J.P., McCarthy and Eng, JJ., concur.

Covello, J. (dissenting and voting to affirm the order, with the following memorandum, in which Angiolillo, J., concurs): Although couched in terms of negligence, the first cause of action is, in actuality, a cause of action to recover damages for medical malpractice. Since the defendant (hereinafter Menorah Home) was entitled to summary judgment dismissing that cause of action in its entirety, I must respectfully dissent.

When misfeasance occurring within the context of a physician-patient relationship causes injury to the patient, a cause of action to recover damages for that injury sounds in medical malpractice when "the challenged conduct 'constitutes medical treatment or bears a substantial relationship to the rendition of medical treatment by a licensed physician' " (*Weiner v Lenox Hill Hosp.,* 88 NY2d 784, 788 [1996], quoting *Bleiler v Bodnar,* 65 NY2d 65, 73 [1985]). A medical facility's assessment of a patient's "supervisory and treatment needs" constitutes "an integral part of the process of rendering medical treatment to" the patient (*Scott v Uljanov,* 74 NY2d 673, 675 [1989]). Therefore, when a plaintiff challenges a medical facility's assessment of a patient's supervisory or treatment needs, the plaintiff's claim sounds in medical malpractice (*see Scott v Uljanov,* 74 NY2d at 675).

As evident from the allegations in support of the first cause of action, the bill of particulars, and the arguments she raised before the Supreme Court and on appeal, the essence of the plaintiff's claim is that Menorah Home's staff improperly assessed the decedent's supervisory and treatment needs. The

plaintiff notes that Menorah Home's records reflect that approximately six weeks before the second fall, the decedent fell when attempting to walk to the bathroom. The plaintiff also notes that those records reflect that a few days before the second fall, the decedent had trouble balancing when standing. Yet, as the plaintiff emphasizes, Menorah Home's staff, despite being aware of all of this, never implemented any precautionary measures designed to prevent the decedent from getting out of bed and falling.

Hence, Menorah Home's staff's assessment of the decedent's supervisory and treatment needs, which is what led to the absence of restraints, safety devices, and supervision at the time of the second fall, is "the challenged conduct" (*Weiner v Lenox Hill Hosp.*, 88 NY2d at 788). Accordingly, the first cause of action sounds in medical malpractice (*see Scott v Uljanov*, 74 NY2d at 675; *Caso v St. Francis Hosp.*, 34 AD3d 714, 715 [2006]; *Rey v Park View Nursing Home*, 262 AD2d 624, 626 [1999]; *Smee v Sisters of Charity Hosp. of Buffalo*, 210 AD2d 966, 967 [1994]; *Brath v Kenmore Mercy Hosp.*, 198 AD2d 771 [1993]; *Raus v White Plains Hosp.*, 156 AD2d 354, 354-355 [1989]; *Fox v White Plains Med. Ctr.*, 125 AD2d 538 [1986]; *cf. Chaff v Parkway Hosp.*, 205 AD2d 571 [1994]; *Lenny v Loehmann*, 78 AD2d 813, 814 [1980]).

It should be noted, though, that a case involving a patient falling in a medical facility does not necessarily involve a challenge to an assessment of the patient's supervisory and treatment needs. In *Edson v Community Gen. Hosp. of Greater Syracuse* (289 AD2d 973, 974 [2001]), *Halas v Parkway Hosp.* (158 AD2d 516, 517-518 [1990]), *Papa v Brunswick Gen. Hosp.* (132 AD2d 601 [1987]) and *White v Sheehan Mem. Hosp.* (119 AD2d 989 [1986]), cited by the majority in support of its determination that a claim of negligence is involved here, and *Reardon v Presbyterian Hosp. in City of N.Y.* (292 AD2d 235, 237 [2002]), patients fell in medical facilities. In each case, the courts, in holding that the plaintiff's claim sounded in negligence, determined that under the particular circumstances presented, the defendant's alleged misfeasance did not relate to medical treatment (*see Reardon v Presbyterian Hosp. in City of N.Y.*, 292 AD2d at 237; *Edson v Community Gen. Hosp. of Greater Syracuse*, 289 AD2d at 974; *Halas v Parkway Hosp.*, 158 AD2d at 517; *Papa v Brunswick Gen. Hosp.*, 132 AD2d at 603; *White v Sheehan Mem. Hosp.*, 119 AD2d at 989). However, as discussed, *supra*, under the particular circumstances presented here, the alleged misfeasance clearly relates to an assessment of a patient's treatment and supervisory needs, and hence, medical treatment (*see Scott v Uljanov*, 74 NY2d at 675).

Since the first cause of action sounded in medical malpractice, on its motion for summary judgment, Menorah Home had the burden of establishing, through a medical expert's affidavit or affirmation, that its staff did not depart from accepted medical practice, or that if there was a departure, the decedent was not injured thereby (*see Rebozo v Wilen,* 41 AD3d 457, 458 [2007]; *Thompson v Orner,* 36 AD3d 791, 792 [2007]; *Williams v Sahay,* 12 AD3d 366, 368 [2004]). In this regard, Menorah Home provided an affidavit from a medical expert, who reviewed the decedent's medical and Menorah Home records. After recounting how the decedent's health declined so precipitously in the days preceding the second fall that at the time of that fall "it was reasonable to believe that she could not move enough to fall from bed," Menorah Home's expert essentially opined that Menorah Home's staff did not depart from accepted medical practice in assessing the decedent's supervisory and treatment needs. Menorah Home therefore demonstrated its prima facie entitlement to judgment as a matter of law with respect to the first cause of action. Since, in opposition, the plaintiff failed to provide any affidavit or affirmation from a medical expert to rebut Menorah Home's expert's opinion, Menorah Home was entitled to summary judgment dismissing the first cause of action (*see Spicer v Community Family Planning Council Health Ctr.,* 272 AD2d 317, 317-318 [2000]; *Damen v North Shore Univ. Hosp.,* 262 AD2d 598, 598-599 [1999]; *Orr v Meisel,* 248 AD2d 451, 451-452 [1998]; *Schaefer v Marchiano,* 193 AD2d 664 [1993]).

The majority, concluding that the first cause of action is partially predicated upon a claim of negligence, holds that Menorah Home was not entitled to summary judgment dismissing that claim in its entirety. In reaching the conclusion that a claim of negligence is being asserted, the majority relies upon the proposition that " '[t]he distinction between ordinary negligence and malpractice turns on whether the acts or omissions complained of involve a matter of medical science or art requiring special skills not ordinarily possessed by lay persons or whether the conduct complained of can instead be assessed on the basis of the common everyday experience of the trier of the facts' " (*Halas v Parkway Hosp.,* 158 AD2d 516, 516-517 [1990]; *Miller v Albany Med. Ctr. Hosp.,* 95 AD2d 977, 978 [1983]). However, this is not the test to determine whether challenged conduct constitutes medical malpractice or negligence (*see Weiner v Lenox Hill Hosp.,* 88 NY2d at 788-789; *Rodriguez v Saal,* 43 AD3d 272, 275-276 [2007]; *Payette v Rockefeller Univ.,* 220 AD2d 69, 73-74 [1996]; *Stanley v Lebetkin,* 123 AD2d 854 [1986]). Rather, the test is that repeatedly set forth by the Court

of Appeals—a claim sounds in medical malpractice, and not negligence, when the challenged conduct constitutes medical treatment or bears a substantial relationship to the rendition of medical treatment by a licensed physician (*see Weiner v Lenox Hill Hosp.*, 88 NY2d at 788; *Scott v Uljanov*, 74 NY2d at 674-675; *Bleiler v Bodnar*, 65 NY2d at 72). This question, and not the question of whether expert testimony is needed to establish the alleged misfeasance, is the "determinative" (*Weiner v Lenox Hill Hosp.*, 88 NY2d at 788) or "critical" question (*Caso v St. Francis Hosp.*, 34 AD3d at 714-715; *Mendelson v Clarkstown Med. Assoc.*, 271 AD2d 584 [2000]; *Lippert v Yambo*, 267 AD2d 433 [1999]; *Chaff v Parkway Hosp.*, 205 AD2d at 572; *Stanley v Lebetkin*, 123 AD2d 854 [1986]).

To illustrate, in *Scott v Uljanov* (74 NY2d at 674-675), the plaintiff, who was 46 years old, presented himself at a hospital's emergency room with a .29 blood alcohol level. He was placed in a hospital bed with the side rails up (*see Scott v Uljanov*, 74 NY2d at 674). His mother was seated alongside his bed (*see Scott v Uljanov*, 74 NY2d at 674). Approximately 30 minutes after being placed in the bed, he climbed over its end, fell, and cut his head (*see Scott v Uljanov*, 74 NY2d at 674). He then commenced an action against the hospital, setting forth a cause of action in which he alleged that he was "negligently supervised" while in the bed (*Scott v Uljanov*, 74 NY2d at 674). Although it might seem that a juror could rely upon his or her common everyday experience to determine whether a "highly intoxicated" patient needs more than bed rails flipped up and supervision from a parent in order to be protected from a fall, the Court of Appeals, in determining that the plaintiff's cause of action sounded in medical malpractice rather than negligence, did not consider this (*see Scott v Uljanov*, 74 NY2d at 674). Rather, the Court focused on the fact that the plaintiff was challenging the hospital's staff's assessment of his supervisory and treatment needs (*see Scott v Uljanov*, 74 NY2d at 674).

The majority also essentially concludes that the question of whether safety devices or tools needed to be implemented in the five-hour period preceding the second fall in order to protect the decedent from falling does not involve specialized knowledge or medical science or diagnosis, and can be assessed by a lay person based on his or her common everyday experience. As just discussed, though, even if this is the case, this does not necessarily mean that a claim of negligence is involved (*see Weiner v Lenox Hill Hosp.*, 88 NY2d at 788-789; *Rodriguez v Saal*, 43 AD3d at 275-276; *Payette v Rockefeller Univ.*, 220 AD2d at 73-74; *Stanley v Lebetkin,* 123 AD2d 854 [1986]). In any event, the

question does indeed involve specialized knowledge or medical science or diagnosis, and cannot be assessed by a lay person based on his or her common everyday experience (*cf. Hranek v United Methodist Homes of Wyo. Conference,* 27 AD3d 879, 880-881 [2006]; *Yamin v Baghel,* 284 AD2d 778, 778-780 [2001]). This is evidenced by the fact that Menorah Home's staff would only implement safety devices and tools in an effort to protect residents against falls after the resident was "assess[ed]" to determine whether he or she was "a high risk for falls," and the resident's "committee," which consisted of the resident's physician and other medical professionals, decided that safety devices or tools were "needed." This is also evidenced by the supervising nurse's response to the question of whether the decedent was at risk of falling out of bed at the time of the first fall, which demonstrates that a degree of medical expertise is necessary for one to intelligently answer the question of whether safety devices or tools are necessary to guard against falls: "[A]bsolutely not . . . [The decedent] was cognitively intact, alert, oriented times three. She ambulated, her gait was steady with her walker and she always got in and out of bed in a safe manner."

In light of the foregoing, the Supreme Court correctly awarded Menorah Home summary judgment dismissing the first cause of action in its entirety. Since the plaintiff's remaining contentions are without merit, the Supreme Court's order should be affirmed.