■ TARA WARLEY, Respondent, v JOY L. GRAMPP et al., Defendants, and SPRINGBROOK NY, INC., Appellant. [967 NYS2d 444]—

Garry, J. Appeal from an order of the Supreme Court (Coccoma, J.), entered January 17, 2012 in Otsego County, which denied a motion by defendant Springbrook NY, Inc. for summary judgment dismissing the complaint against it.

Defendant Springbrook NY, Inc. (hereinafter defendant) provides various services to developmentally disabled individuals, including a day program in which plaintiff, an adult with mild mental retardation, was enrolled in November 2008. Consistent with her usual practice, a respite worker employed by defendant transported plaintiff from her rural home to the program location in the City of Oneonta, Otsego County on the day in question. Plaintiff advised the worker that, for the return trip, plaintiff's mother wanted the worker to transport her to the mother's workplace on Route 28 in the Town of Milford, Otsego County. After the program, however, the worker put plaintiff on a city bus instead, which she exited at the side of Route 28. Plaintiff was struck by a car while crossing the roadway.[1] Plaintiff commenced this action alleging, among other things, that defendant's negligence proximately caused her injuries. Following joinder of issue, defendant moved for summary judgment dismissing the complaint against it. Supreme Court denied the motion, and defendant appeals.

Defendant contends that it was entitled to summary judgment because it established as a matter of law that it did not owe plaintiff a duty at the time of the accident, that it did not breach any such duty, and that plaintiff's conduct in darting unexpectedly across the highway was a superseding intervening act and the sole proximate cause of her injuries. We disagree. Although defendant was not an insurer of plaintiff's safety, it owed her a duty to exercise reasonable care commensurate with her abilities and limitations as known to defendant (*see N.X. v Cabrini Med. Ctr.*, 97 NY2d 247, 252-253 [2002]; *Killeen v State of New York*, 66 NY2d 850, 851-852 [1985]; *Dawn VV. v State of New York*, 47 AD3d 1048, 1050 [2008]). Defendant argues that it had been providing services to plaintiff for approximately eight years, was consequently well aware of her abilities and limitations, and had determined that she was capable of taking public transportation and traveling independently in the community. Defendant's records and planning documents confirm that plaintiff had safely used public transportation without supervision in the past and that defendant had trained her to

---

1. This incident was the subject of a prior appeal by the driver of the vehicle that struck plaintiff (103 AD3d 997 [2013]).

cross streets and take buses within the City of Oneonta and had determined that she was able to do so independently. However, the records also confirm—and defendant does not dispute—that defendant had provided no such training or evaluation with regard to plaintiff's ability to cross a state highway outside the city, in a location without traffic lights, stop signs or crosswalks. Notably, a 2007 record states that an employment arrangement then under consideration for plaintiff would be problematic because it would require her "to cross a major road and [she] would need training on that."

Defendant maintained both an individualized service plan that assessed plaintiff's needs, abilities and goals, and a day habilitation plan that specifically addressed her participation in the day program. These plans were regularly updated and, at the time of the accident, both provided that plaintiff "is able to go in the community, and access public transportation." However, the day habilitation plan—which the respite worker was required to follow—also stated that plaintiff "still requires adult supervision to ensure her safety" and that employees were to "ensure that [she] is safe at all times while they are together in the community" and "remind [her] of safety skills (i.e. street crossing . . . ) as it becomes necessary." As defendant's investigator conceded, these entries were susceptible of contradictory interpretations as to plaintiff's ability to use public transportation without supervision and, thus, the plan failed to provide specific guidance as to the extent of her relevant abilities. These discrepancies present factual issues.

As to the scope of its duty, defendant contends that it was not responsible for plaintiff at the time of the accident, noting that she was an adult who lived at home with her family, participated in the day program only two days each week and was injured only after she had left the program and was no longer under its supervision. However, defendant's records indicate that its involvement with plaintiff's life and safety extended beyond her participation in the day program. The planning documents address plaintiff's daily living skills, her employment, her personal and family relationships and such safety-related matters as fire safety and medication administration arrangements in plaintiff's home. Defendant employed a service coordinator who met regularly with plaintiff to assist her with such matters; the coordinator's notes reveal that she routinely helped plaintiff and her mother with issues related to plaintiff's safety in her private life.

As to the responsibility of defendant's respite worker for plaintiff after she left the program on the day of the accident,

the testimony established that the job responsibilities of these workers generally included transportation, and that plaintiff's worker routinely provided this service. Moreover, although the worker testified that she had sometimes previously placed plaintiff on the bus rather than driving her home, she also stated that on those occasions she had done so upon the direction of plaintiff's mother. She acknowledged that on this occasion the mother's instructions were not followed and that, although the worker did consult with plaintiff to determine her willingness to take the bus, she did not telephone the mother to notify her that plaintiff had agreed to take the bus and would be crossing the road.[2]

Finally, plaintiff provided an expert affidavit opining that defendant failed to comply with the standard of care for facilities providing services to disabled individuals, in that its worker placed plaintiff on the bus knowing that she would have to cross the highway without supervision despite the safety requirements for street crossing in the day habilitation plan and despite plaintiff's lack of pertinent training. Accordingly, we agree with Supreme Court that summary judgment in defendant's favor is precluded by material issues of fact as to the degree of care that defendant owed to plaintiff and its compliance with that duty (*see N.X. v Cabrini Med. Ctr.*, 97 NY2d at 252-254; *Campbell v Cluster Hous. Dev. Fund Co.*, 247 AD2d 353, 354 [1998]; *compare Caldwell v State of New York*, 72 AD3d 1248, 1249-1250 [2010]). Further, given the record evidence regarding defendant's knowledge of plaintiff's abilities and limitations, we find that it did not establish as a matter of law that its conduct in sending plaintiff to an unsupervised location along a highway was not the proximate cause of her injuries or that plaintiff's actions constituted an intervening cause (*see Campbell v Cluster Hous. Dev. Fund Co.*, 247 AD2d at 354).

Supreme Court properly awarded motion costs in accord with CPLR 8106. Contrary to the parties' claims, there is no indication that the court intended to impose costs for frivolous conduct (*see Gjonaj v Sines*, 69 AD3d 1188, 1191 [2010]; 22 NYCRR 130-1.1).

Lahtinen, J.P., McCarthy and Egan Jr., JJ., concur. Ordered that the order is affirmed, with costs.

---

**2.** Although there was testimony that plaintiff had sometimes taken the bus to her home, it was not clearly shown that she had ever previously taken a bus from the program to the accident site; testimony reveals one occasion when plaintiff took a bus to this location, but she was traveling from the opposite direction, and thus did not have to cross the highway after disembarking.