*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:   October 22, 2015                    518302
_____

DANIEL M. MARTUSCELLO, as
    Executor of the Estate of
    MARYANNA J. DARMIENTO,
    Deceased,
                          Appellant,

        v
                                        OPINION AND ORDER

SUSAN M. JENSEN,
                          Defendant,

        and

HORIZON FAMILY MEDICAL GROUP,
                          Respondent.
_____


Calendar Date:   September 10, 2015

Before:   Lahtinen, J.P., Garry, Lynch and Devine, JJ.

                    _____


        Rush Wadlin Heppner & Martuscello, LLP, Kingston (E.
Michael Kavanagh of counsel), for appellant.

        Marks, O'Neill, O'Brien, Doherty & Kelly, PC, Elmsford
(Robert E. Fein of counsel), for respondent.

                    _____


Garry, J.

        Appeal from a judgment of the Supreme Court (Melkonian,
J.), entered April 1, 2013 in Ulster County, upon a verdict
rendered in favor of defendant Horizon Family Medical Group.

        Maryanna J. Darmiento (hereinafter decedent), then 81 years
old, was transported by a relative to a medical office owned by
defendant Horizon Family Medical Group for a routine physical

examination to be conducted by defendant Susan M. Jensen, who was Horizon's employee and had been decedent's physician for many years.[1]  Her relative remained in the waiting area, and decedent was accompanied into an examination room by a medical assistant, who allegedly directed decedent to seat herself on the examination table.  Decedent later testified that she did so, but told the assistant that she did not feel secure there.  According to decedent, the assistant nevertheless left the room, and decedent slipped off the table and fell to the floor.  The assistant denied that she either left the room or that decedent had complained that she was insecure, testifying instead that decedent fell when the assistant turned away momentarily to put decedent's medical chart on a counter.

Decedent commenced this action alleging, among other things, that she was provided with inadequate assistance and supervision on the examination table in view of her age and medical conditions.  Supreme Court partially granted defendants' motion for summary judgment, finding, as pertinent here, that decedent's claims sounded in negligence rather than medical malpractice and that triable issues of fact barred summary judgment for defendants on the negligence claim.  Following the close of proof in the subsequent bifurcated jury trial on the issue of liability, all causes of action against Jensen were dismissed, leaving Horizon as the sole remaining defendant.[2]  The jury found that Horizon had not been negligent, and the court issued a final judgment dismissing the action.  Plaintiff appeals, contending that a series of erroneous evidentiary rulings and improper jury instructions prevented decedent from establishing that her accident was foreseeable and was caused by Horizon's failure to provide her with adequate assistance and supervision.

---

[1]  Decedent died while this appeal was pending, and her executor was substituted as plaintiff.

[2]  The medical assistant was originally named as a third defendant, but the claims against her were dismissed before the trial.

We begin with plaintiff's challenge to the jury instructions. A jury has been properly charged when the instructions, "viewed as a whole, adequately presented the pertinent legal principles to be applied and the factual issues to be resolved" (State of New York v 158th St. & Riverside Dr. Hous. Co., Inc., 100 AD3d 1293, 1299 [2012], lv denied 20 NY3d 858 [2013] [internal quotation marks and citations omitted]; see Spensieri v Lasky, 94 NY2d 231, 239-240 [1999]). Plaintiff contends that Supreme Court's instructions inaccurately presented the legal principles at issue and thus prevented the jury from fully considering Horizon's potential liability for decedent's injuries. We agree, and for this and other reasons, find that a new trial is required.

During the charge conference, Horizon's counsel asked Supreme Court to instruct the jury on premises liability pursuant to PJI 2:90. Decedent's counsel objected that the case did not concern premises liability, that decedent did not claim that any physical defect or dangerous condition existed in the medical office, and that the issue instead was whether Horizon and its employees had provided decedent with adequate supervision and assistance. The court nevertheless determined that a premises liability instruction was appropriate and, over decedent's renewed objection, gave the jury a modified charge based on PJI 2:90 that attempted to combine the concepts of premises liability and adequate supervision.[3] In its unmodified form, PJI 2:90 sets forth a two-step process in which the jury is first instructed to determine whether the defendant's premises were reasonably safe and — only if it answers this question in the negative — to then determine whether the defendant was negligent in permitting the

---

[3] We reject Horizon's suggestion that decedent's objection to the subject instruction was waived by her counsel's later statement that the question as to whether decedent was provided with adequate assistance and supervision was "covered under [the] charge." Notably, this statement was made after Supreme Court had already rendered its decision. Read in context, the statement merely acknowledges the court's ruling and cannot be fairly read to waive the prior objection, which had properly preserved the issue.

unsafe condition to exist and whether its negligence was a substantial factor in causing the plaintiff's injuries.  Adopting this structure, the modified instruction charged the jury that decedent was first required to "prove that the premises were not reasonably safe" and, in deciding whether decedent had met this requirement, the jury was to determine "whether the assistance provided by [the medical assistant] to [decedent] was reasonably safe."  If the jury's answer was affirmative, it was to proceed no further; but if the answer was negative, the jury was to next determine whether Horizon had been negligent in that it knew or should have known that decedent would need assistance and supervision on the examination table but failed to provide her with such assistance or direct her to use a suitable alternative such as a chair.  This modified instruction failed in several respects to set forth the applicable legal principles and factual issues.

Recovery in a premises liability action is predicated on "ownership, occupancy, control or special use of [a] property" where a dangerous or defective condition exists (Seymour v David W. Mapes, Inc., 22 AD3d 1012, 1013 [2005] [internal quotation marks and citation omitted]; accord Semzock v State of New York, 97 AD3d 1012, 1012 [2012]).  Here, decedent neither alleged that Horizon's liability arose from its ownership of dangerous or defective premises nor that any defects or dangerous conditions existed (compare NY PJI 2:90, Comment, Defective Conditions) [Note: online treatise].  Instead, decedent asserted that Horizon was liable for the acts and omissions of its employees in failing to recognize the need for, or provide decedent with, adequate assistance and supervision – an analysis unrelated to the physical condition of the medical office or the legal principles underlying premises liability.  Supreme Court's attempt to combine the two concepts resulted in an instruction that improperly advised the jury that decedent was required to prove that the premises were unsafe.  Moreover, the instruction confusingly directed the jury to evaluate the actions of the medical assistant twice, first by determining whether her actions were "reasonably safe" and then – without clarifying the distinction, if there is one – whether those same actions were negligent.

The modified instruction further misstated the threshold issue of the applicable duty of care.  "Although the existence of a duty is a question of law to be determined by the courts, the factfinder must be instructed on the nature and scope of such duty so as to ascertain any breach thereof" (Gadani v Dormitory Auth. of State of N.Y., 64 AD3d 1098, 1102 [2009] [internal citation omitted]).  The modified instruction used the language of PJI 2:90 to charge the jury that "[t]he possessor of a building has a duty to use reasonable care to keep the premises in a reasonably safe condition for the protection of all persons whose presence is reasonably foreseeable," followed by new language advising the jury that "[a] facility also has a duty to exercise ordinary and reasonable care to ensure that no unnecessary harm befalls a patient."  The first of the two statements pertains to premises liability and, as previously discussed, is inapplicable here.  The second statement, although not inapplicable to a negligence analysis, is incomplete.  It is well settled that a medical facility used by persons who may be ill, disabled or otherwise vulnerable "ha[s] a duty to exercise reasonable care and diligence in safeguarding a patient, based in part on the capacity of the patient to provide for his [or her] own safety" (Papa v Brunswick Gen. Hosp., 132 AD2d 601, 603 [1987]; see N.X. v Cabrini Med. Ctr., 97 NY2d 247, 252-253 [2002]; Killeen v State of New York, 66 NY2d 850, 851-852 [1985]; Dawn VV. v State of New York, 47 AD3d 1048, 1050 [2008]; White v Sheehan Mem. Hosp., 119 AD2d 989, 989 [1986]; see also Warley v Grampp, 107 AD3d 1111, 1112 [2013]).  "The degree of reasonable care is measured by the physical and mental infirmities of the patient[] as the [facility's] officials and employees know them" (Mulberg v State of New York, 35 AD2d 856, 856 [1970] [emphasis added], affd 29 NY2d 916 [1972] [citation omitted]; see Campbell v Cluster Hous. Dev. Fund Co., 247 AD2d 353, 354 [1998]).

Here, decedent alleged that she suffered from a number of chronic medical conditions that, taken together and in combination with her age, increased her risk of falling; she further alleged that, as she had been Jensen's patient since at least 1997, these conditions and her infirmities were or should have been well known to Horizon.  However, the revised instruction omitted any reference to decedent's physical and

mental capacities or to Horizon's knowledge of them, thus misstating the applicable duty and foreclosing the jury from making an informed determination as to whether the medical assistant's actions in assisting and supervising decedent constituted a breach of Horizon's duty to safeguard her welfare.

This misapprehension of the applicable principles of law also led Supreme Court to improperly limit decedent's ability to provide evidence at trial of decedent's physical and mental capacities and Horizon's knowledge of them. Following the court's decision to bifurcate the trial, decedent's counsel asked the court to permit the testimony of two expert physicians pertaining to decedent's risk of falling as a result of her medical conditions. One of the physicians was decedent's expert, who based his opinion upon a review of decedent's medical records. The other had been retained by defendants to conduct a medical examination; an opinion set forth within his report was that decedent was at a significant risk of falling and sustaining serious injuries at the time of her accident.[4] The court precluded the testimony of both physicians on the ground that defendants' liability was an issue of ordinary negligence to be determined by the jury on the basis of its common knowledge and everyday experience, such that expert testimony was not required. As a result of this ruling, the jury heard no medical testimony regarding decedent's medical conditions, except from Jensen. Counsel for decedent called Jensen, who was then still a defendant in the action, to testify at trial. When decedent attempted to inquire about the effect of decedent's medical conditions upon her risk of falling, the court sustained defendants' objections and precluded Jensen from answering on the ground that the action did not sound in malpractice and such testimony was thus irrelevant. Although this testimony was precluded upon direct examination, Jensen was permitted to testify during her cross-examination by defendants' counsel that several of decedent's medical conditions did not affect her risk of falling, on the ground that decedent had opened the door by asking about the issue.

---

[4] Defendants' counsel advised that he did not intend to call this physician during the liability phase of the trial.

Decedent's counsel repeatedly asserted that the effect of decedent's medical conditions on her risk of falling was directly relevant to the question of whether Horizon — a medical practice — breached its duty to safeguard decedent's welfare, in view of its knowledge of her infirmities. We agree. In the circumstances here presented, however, we also find it necessary to review Supreme Court's initial determination, examining whether the claim sounds in negligence or malpractice.[5]

"[T]he distinction between medical malpractice and negligence is a subtle one, for medical malpractice is but a species of negligence and 'no rigid analytical line separates the two'" (Weiner v Lenox Hill Hosp., 88 NY2d 784, 787 [1996], quoting Scott v Uljanov, 74 NY2d 673, 674 [1989]). As the Second Department stated in finding that an action arising from a patient's fall from an examining table sounded in malpractice rather than negligence, "[t]he critical question in determining whether an action sounds in medical malpractice or simple negligence is the nature of the duty to the plaintiff which the defendant is alleged to have breached" (Stanley v Lebetkin, 123 AD2d 854, 854 [1986]). Conduct "that constitutes medical treatment or bears a substantial relationship to the rendition of medical treatment by a licensed physician" is malpractice (Bleiler v Bodnar, 65 NY2d 65, 72 [1985]). Conduct is negligence rather than malpractice when "the gravamen of the complaint is not negligence in furnishing medical treatment to a patient, but [a medical facility's] failure in fulfilling a different duty" (Bleiler v Bodnar, 65 NY2d at 73; see Scott v Uljanov, 74 NY2d at 675; Lipe v Albany Med. Ctr., 85 AD3d 1442, 1443 [2011]). The issue devolves to whether medical judgment is required or not; where the underlying claim arises from the failure to follow a medical order previously made or to apply standards of ordinary care, then it is negligence, without regard to whether expert testimony is deemed helpful to the resolution. However, where the conduct involves a standard established by means of the exercise of medical judgment, then it is malpractice (see D'Elia

---

[5] Decedent's appeal from the final judgment brings up the pretrial order for review (see CPLR 5501 [a] [1]; Dolan v Jaeger, 285 AD2d 844, 846 n 2 [2001]).

v Menorah Home & Hosp. For Aged & Infirm, 51 AD3d 848, 851
[2008]; Mossman v Albany Med. Ctr. Hosp., 34 AD2d 263, 264
[1970]).

Here, decedent was not a stranger to defendants.  Her
medical records established that she had been Jensen's patient
since the mid-1990s, and that Jensen had assessed, diagnosed and
treated her at Horizon's medical office – including providing her
with fall-prevention counseling – on many previous occasions.
The core of the argument on behalf of decedent is that, as a
result of Jensen's doctor-patient relationship with decedent,
Jensen and Horizon were familiar with her various medical
conditions, knew or should have known that she posed a
significant risk of falling and, therefore, should have
recognized the need to provide assistance and supervision in
using the examining table whenever she visited the office for
treatment, or a safer alternative such as a chair.  "It was only
[defendants'] awareness of [decedent's] complaints, acquired in
the course of that relationship, when coupled with [Jensen's]
knowledge as a physician, which would give rise to a duty to
assist her on or off the table, or to keep her under constant
surveillance in view of her complaints" (Stanley v Lebetkin, 123
AD2d at 855 [internal quotation marks and emphasis omitted]).  As
such, the conduct in question "[bore] a substantial relationship
to the rendition of medical treatment" (Bleiler v Bodnar, 65 NY2d
at 72).

The assessment of a patient's risk of falling as a result
of his or her medical condition, and the patient's consequent
need for assistance, protective equipment or supervision, are
medical determinations that sound in malpractice (see Smee v
Sisters of Charity Hosp. of Buffalo, 210 AD2d 966, 967 [1994];
Fox v White Plains Med. Ctr., 125 AD2d 538, 538-539 [1986]).
Likewise, whether Horizon breached applicable standards of care
for medical offices in supervising and assisting decedent in view
of her medical condition "necessitates a comparison to the
standard of care customarily exercised by [comparable medical
facilities] . . . [that] cannot be determined without a full
appreciation and understanding of the operational demands and
practices of [such facilities]" and raises issues of malpractice

rather than negligence (Zellar v Tompkins Community Hosp., 124 AD2d 287, 289 [1986]; see Smee v Sisters of Charity Hosp. of Buffalo, 210 AD2d at 968; Miller v Albany Med. Ctr. Hosp., 95 AD2d 977, 978 [1983]; see also Vandenburgh v Columbia Mem. Hosp., 162 AD2d 880, 881-882 [1990]).

Expert testimony is a necessary part of a malpractice action, as the plaintiff is required to establish the relevant professional standard of care (see Jack Hall Plumbing & Heating, Inc. v Duffy, 100 AD3d 1082, 1083 [2012]; Wood v State of New York, 45 AD3d 1198, 1198-1199 [2007]; Columbus v Smith & Mahoney, 259 AD2d 857, 858 [1999]). This case hinges upon a malpractice standard. For the reasons set forth above, a new trial is required. This determination renders the parties' remaining contentions academic.

Lahtinen, J.P., Lynch and Devine, JJ., concur.

ORDERED that the judgment is reversed, on the law, with costs, and matter remitted to the Supreme Court for a new trial.

ENTER:

Robert D. Mayberger
Clerk of the Court