Currie v Oneida Health Sys., Inc. (2023 NY Slip Op 06780)

Currie v Oneida Health Sys., Inc.

2023 NY Slip Op 06780

Decided on December 28, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:December 28, 2023

535504
[*1]Ronald George Currie, as Executor of the Estate of Barbara Jane Currie, Deceased, Respondent,
v
Oneida Health Systems, Inc., Doing Business as Oneida Healthcare Extended Care Facility, et al., Appellants.

Calendar Date:September 6, 2023

Before:Clark, J.P., Aarons, Reynolds Fitzgerald, Ceresia and Fisher, JJ.

Martin, Ganotis, Brown, Mould & Currie, PC, Syracuse (Gabrielle L. Bull of counsel), for appellants.
Nicholas, Perot, Smith, Welch & Smith, PC, Liverpool (Michael J. Welch of counsel), for respondent.

Fisher, J.
Appeal from an order of the Supreme Court (Donald F. Cerio Jr., J.), entered May 24, 2022 in Madison County, which denied defendants' motion for summary judgment dismissing the complaint.
Following a hospital admission, Barbara Jane Currie (hereinafter decedent) was transferred to a residential facility operated by defendants in September 2015. Upon admission to defendants' facility, decedent was diagnosed to have "[g]eneralized weakness with multiple falls" at home. Her admission history and physical history noted that she was "certainly weak on her feet, despite having a walker," "certainly at risk for falls at this time," should "be monitored closely for falls" and ultimately determined to be a "high risk for falls." Of significance, decedent's blood thinner prescription was discontinued "as it [was] too risky due to her frequent falls." In the first few days after her admission, decedent was found by staff members to be wandering the hallways, unable to answer where she was and to have been experiencing confusion or bouts of yelling. In the weeks that followed, decedent was observed to continue to be pacing and wandering the hallway, particularly at night, as well as experiencing symptoms of dementia — with which she was subsequently diagnosed. Decedent had some initial success improving her ability to ambulate through physical therapy, which led to physicians permitting the continuation of her blood thinner. However, after decedent's first fall — one of up to seven falls that she experienced at defendants' facility — her blood thinner was again stopped. During this time, including after her third fall, decedent was re-evaluated at physical therapy to be a "very high risk to fall" with a "significant decline in mobility along with a much more confused state of being," ultimately resulting in a determination that decedent was "no longer able to ambulate independently or stand unsupported." Despite this, decedent fell three or four more times at defendants' facility — including while on blood thinners despite decedent's acknowledged fall risk and defendants' prior cessation of such medication due to such risk — before being transferred in December 2015 and passing away at another facility.
Thereafter, plaintiff, the executor of decedent's estate, commenced this action alleging claims related to the care rendered to decedent at defendants' residential facility. Specifically, plaintiff alleged claims under Public Health Law § 2801-d (first and fourth causes of action), claims for breach of contract (second and fifth causes of action) and negligence claims (third and sixth causes of action). Following joinder of issue and discovery, defendants moved for summary judgment dismissing the complaint, which was opposed by plaintiff. Supreme Court denied the motion. Defendants appeal.
Beginning with the third and sixth causes of action, both of which were denominated as negligence claims, the parties dispute whether these causes of action seek damages [*2]for medical malpractice or ordinary negligence. Although there is no rigid line that separates a medical malpractice claim from an ordinary negligence claim, each claim rests on the principle that healthcare providers "have a duty to exercise reasonable care and diligence in safeguarding a patient, based in part on the capacity of the patient to provide for his [or her] own safety" (Papa v Brunswick Gen. Hosp., 132 AD2d 601, 603 [2d Dept 1987]; see Weiner v Lenox Hill Hosp., 88 NY2d 784, 787-788 [1996]; Bleiler v Bodnar, 65 NY2d 65, 73 [1985]; Jeter v New York Presbyt. Hosp., 172 AD3d 1338, 1339 [2d Dept 2019]; Lipe v Albany Med. Ctr., 85 AD3d 1442, 1443 [3d Dept 2011]; Halas v Parkway Hosp., 158 AD2d 516, 516 [2d Dept 1990]; Zellar v Tompkins Community Hosp., 124 AD2d 287, 288-289 [3d Dept 1986]). When that duty arises from "medical treatment or bears a substantial relationship to the rendition of medical treatment by a licensed physician to a particular patient," the breach of such duty sounds in medical malpractice and not ordinary negligence (Dunbar v Women & Children's Hosp. of Buffalo, 217 AD3d 1373, 1373-1374 [4th Dept 2023] [internal quotation marks and citations omitted]; see Martuscello v Jensen, 134 AD3d 4, 11 [3d Dept 2015]). In contrast, where it is alleged that the breach occurred not while "furnishing medical treatment to a patient, but the failure to fulfill a different duty, the claim sounds in ordinary negligence" (Kelty v Genovese Drug Stores, Inc., 214 AD3d 776, 777 [2d Dept 2023] [internal quotation marks and citations omitted]; see Lipe v Albany Med. Ctr., 85 AD3d at 1443; Papa v Brunswick Gen. Hosp., 132 AD2d at 603). As such, in distinguishing between medical malpractice and ordinary negligence, "the critical question . . . is the nature of the duty to the plaintiff which the defendant is alleged to have breached" (Martuscello v Jensen, 134 AD3d at 11 [internal quotation marks, brackets and citation omitted]; see Rabinovich v Maimonides Med. Ctr., 179 AD3d 88, 92-93 [2d Dept 2019]). Such distinction hinges on the facts of each situation, and specifically " 'whether the acts or omissions complained of involve a matter of medical science or art requiring special skills not ordinarily possessed by lay persons or whether the conduct complained of can instead be assessed on the basis of the common everyday experience of the trier of the facts' " (Jeter v New York Presbyt. Hosp., 172 AD3d at 1339, quoting Miller v Albany Med. Ctr. Hosp., 95 AD2d 977, 978 [3d Dept 1983]; see Lomonaco v United Health Servs. Hosps., Inc., 16 AD3d 958, 960 [3d Dept 2005]; see also Lipe v Albany Med. Ctr., 85 AD3d at 1443).
Here, the third and sixth causes of action contained in the complaint, as amplified by the bill of particulars and supplemental bill of particulars, reveal that they are mixed allegations of medical malpractice and ordinary negligence. Specifically, plaintiff alleged, among other things, that the residential facility failed to enact [*3]and file an appropriate plan for decedent, failed to provide adequate safety measures for decedent, failed to respond to decedent's request for medical assistance and care, failed to provide proper supervision to decedent and failed to properly monitor and provide sufficient nutrients and fluids to decedent. Such allegations relating to "[t]he assessment of a patient's risk of falling as a result of his or her medical condition, and the patient's consequent need for assistance, protective equipment or supervision, are medical determinations that sound in malpractice" (Martuscello v Jensen, 134 AD3d at 12). Accordingly, under the circumstances of this case, these allegations pertain to an assessment of decedent's risk of falling and the necessary care to be rendered to her (see Losak v St. James Rehabilitation & Healthcare Ctr., 199 AD3d 671, 671-672 [2d Dept 2021]; Caso v St. Francis Hosp., 34 AD3d 714, 715 [2d Dept 2006]; Mossman v Albany Med. Ctr. Hosp., 34 AD2d 263, 264 [3d Dept 1970]; see e.g. Hranek v United Methodist Homes of Wyo. Conference, 27 AD3d 879, 880 [3d Dept 2006]; Yamin v Baghel, 284 AD2d 778, 779 [3d Dept 2001]). In other words, these allegations refer to conduct that bears a substantial relationship to the rendition of medical care (see Bleiler v Bodnar, 65 NY2d at 72; Maki v Bassett Healthcare, 85 AD3d 1366, 1367 [3d Dept 2011], appeal dismissed 17 NY3d 855 [2011], lv dismissed & denied 18 NY3d 870 [2012]) and, therefore, these allegations sound in medical malpractice.
Defendants established their prima facie entitlement to summary judgment with respect to the specific allegations sounding in medical malpractice, by and through an expert's affidavit from a physician opining that decedent was provided with fall prevention interventions throughout her admission that met or exceeded the standard of care, and that, following each fall, decedent was rendered the appropriate medical care and treatment. Moreover, this physician opined that the treatment plan developed for decedent and the care rendered to her were within the standard of care and were not a substantial factor in causing the alleged injuries (see Hranek v United Methodist Homes of Wyo. Conference, 27 AD3d at 880). In opposition, plaintiff tendered an expert affidavit from a nurse. However, inasmuch as certain allegations sound in medical malpractice and pertain to medical determinations and what a physician should or should not have done, plaintiff's nurse rendered opinions that "went beyond her professional and educational experience and cannot be considered competent medical opinion" (Douglass v Gibson, 218 AD2d 856, 857 [3d Dept 1995] [internal quotation marks and citation omitted]; see Boltyansky v New York Community Hosp., 175 AD3d 1478, 1479 [2d Dept 2019]). Accordingly, the allegations sounding in medical malpractice contained in the third and sixth causes of action in the complaint should have been dismissed (see Carthon v Buffalo Gen. Hosp. Deaconess Skilled Nursing [*4]Facility Div., 83 AD3d 1404, 1405 [4th Dept 2011]).
Nevertheless, Supreme Court correctly denied defendants' motion for summary judgment as it relates to the remaining allegations, since, "after the medical judgment has been exercised and an order made for [the] use [of protective equipment]," the failure to comply with such order gives rise to a claim sounding in ordinary negligence (Mossman v Albany Med. Ctr. Hosp., 34 AD2d at 264). Indeed, "claims that defendants were negligent in failing to follow the care plan and to [provide certain protective equipment] sound in ordinary negligence inasmuch as they relate to defendants' general duty to safeguard the nursing home's residents, measured by the capacity of a resident to provide for his or her own safety and the resident's physical and mental ailments as known to the [facility's] officials and employees" (Noga v Brothers of Mercy Nursing & Rehabilitation Ctr., 198 AD3d 1277, 1279 [4th Dept 2021] [internal quotation marks, brackets, citations and ellipsis omitted]; see Carthon v Buffalo Gen. Hosp. Deaconess Skilled Nursing Facility Div., 83 AD3d at 1405-1406; Miller v Albany Med. Ctr., 95 AD2d at 979). Similarly, the failure "to use any available safety devices or tools to protect [a] frail, elderly decedent from the risk of falls . . . sounds in ordinary negligence" (D'Elia v Menorah Home & Hosp. for the Aged & Infirm, 51 AD3d 848, 851 [2d Dept 2008]; see Miller v Albany Med. Ctr., 95 AD2d at 979; see also Halas v Parkway Hosp., 158 AD2d at 517; Papa v Brunswick Gen. Hosp., 132 AD2d at 603). Moreover, a "contention of inadequate staffing speaks to negligence" (Zellar v Tompkins Community Hosp., 124 AD2d at 289; see Bleiler v Bodnar, 65 NY2d at 73; see also Lipe v Albany Med. Ctr., 85 AD3d at 1443; Mossman v Albany Med. Ctr. Hosp., 34 AD2d at 265).
Therefore, the balance of plaintiff's allegations in the third and sixth causes of action — notably that defendants failed to follow decedent's care plan, failed to appropriately monitor and supervise decedent, failed to maintain and provide a safe environment to prevent falls, failed to provide adequate safety measures or utilize necessary assistive devices to prevent falls, failed to properly document and investigate falls, failed to maintain adequate staffing levels and failed to follow proper procedures to avoid and prevent decedent from falling — sound in ordinary negligence, as they do not involve specialized knowledge of medical science or diagnosis (see Bleiler v Bodnar, 65 NY2d at 73; Noga v Brothers of Mercy Nursing & Rehabilitation Ctr., 198 AD3d at 1280; Lipe v Albany Med. Ctr., 85 AD3d at 1443; Carthon v Buffalo Gen. Hosp. Deaconess Skilled Nursing Facility Div., 83 AD3d at 1405-1406; D'Elia v Menorah Home & Hosp. for the Aged & Infirm, 51 AD3d at 851; Halas v Parkway Hosp., 158 AD2d at 517; Papa v Brunswick Gen. Hosp., 132 AD2d at 603; Zellar v Tompkins Community Hosp., 124 AD2d at 288; Miller v Albany Med. Ctr., 95 AD2d at 979; Mossman [*5]v Albany Med. Ctr. Hosp., 34 AD2d at 265). In evaluating these allegations through the lens of ordinary negligence, even assuming that defendants met their burden as to these allegations that sound in ordinary negligence, the record contains several glaring questions of fact precluding summary judgment. Notably, according to defendants' expert, decedent was placed on one-to-one supervision "at all times" on December 7, 2015. However, after decedent had an "unwitnessed" fall on December 8, 2015 — demonstrating that decedent was not being provided one-to-one supervision — the nursing notes continued to indicate that decedent was on "15 minute safety checks" until the morning of December 9, 2015, when her chart was updated to indicate one-to-one supervision. The corresponding accident/incident investigation summary for the December 8, 2015 fall also replicated this error, and further included a statement from the nurse assigned to decedent admitting she was with another resident at the time of decedent's fall — therefore establishing, indeed, that she was not one-to-one with decedent at the time of her fall.
Additionally, the record is replete with other directives not being followed, including the use of siderails, lap buddy, bed alarms and mats, which were not reflected as being used in subsequent documentation such as incident reports (see Noga v Brothers of Mercy Nursing & Rehabilitation Ctr., 198 AD3d at 1279-1280; Carthon v Buffalo Gen. Hosp. Deaconess Skilled Nursing Facility Div., 83 AD3d at 1405-1406; Miller v Albany Med. Ctr., 95 AD2d at 979).[FN1] Further, the subsequent use — or purported use — of these devices also indicates that they were, indeed, available at defendants' facility for use, however, many of these devices were not used until decedent had already experienced multiple injury-causing falls (see D'Elia v Menorah Home & Hosp. for the Aged & Infirm, 51 AD3d at 851; Halas v Parkway Hosp., 158 AD2d at 517; Papa v Brunswick Gen. Hosp., 132 AD2d at 603; Miller v Albany Med. Ctr., 95 AD2d at 979). Considering this evidence in a light most favorable to the nonmovant, where the gravamen of these allegations in the third and sixth causes of action concern "the alleged failure to exercise ordinary and reasonable care to insure that no unnecessary harm befell" decedent (Papa v Brunswick Gen. Hosp., 132 AD2d at 603), Supreme Court correctly denied defendants' motion for summary judgment as it relates to the allegations sounding in ordinary negligence (see D'Elia v Menorah Home & Hosp. for the Aged & Infirm, 51 AD3d at 852; see also Noga v Brothers of Mercy Nursing & Rehabilitation Ctr., 198 AD3d at 1280; Lipe v Albany Med. Ctr., 85 AD3d at 1443; Halas v Parkway Hosp., 158 AD2d at 517).
As to the first and fourth causes of action, plaintiff alleged a claim under Public Health Law § 2801-d. Notably, this statute "form[s] a separate basis for liability from medical malpractice or ordinary negligence" (Villani v Kings Harbor Multicare Ctr., 190 [*6]AD3d 534, 535 [1st Dept 2021], lv dismissed 37 NY3d 1085 [2021]; see generally Leclaire v Fort Hudson Nursing Home, Inc., 52 AD3d 1101, 1102 [3d Dept 2008]). In this regard, "[t]he basis for liability under [Public Health Law § 2801-d] is neither deviation from accepted standards of medical practice nor breach of a duty of care" and, instead, the statute "contemplates injury to the patient caused by the deprivation of a right conferred by contract, statute, regulation, code or rule" (Novick v South Nassau Communities Hosp., 136 AD3d 999, 1001 [2d Dept 2016] [internal quotation marks and citation omitted]; see Hauser v Fort Hudson Nursing Ctr., Inc., 202 AD3d 45, 48-49 [3d Dept 2021]).
The opinion by defendants' expert is premised largely on the notion that the residential facility did not depart from the applicable standard of medical care. As mentioned, however, departures from the standard of care do not provide the basis of liability for a claim under Public Health Law § 2801-d. In seeking damages under this statute, plaintiff alleged injuries due to the residential facility's deprivation of decedent's rights conferred upon her by a litany of statutory and regulatory provisions. The supplemental bill of particulars set forth the various statutory and regulatory provisions allegedly violated by the residential facility. Defendants' expert, however, did not adequately address those provisions and, with that failure, defendants did not satisfy their initial summary judgment burden regarding the first and fourth causes of action in the complaint (see Henry v Sunrise Manor Ctr. for Nursing & Rehabilitation, 147 AD3d 739, 741 [2d Dept 2017]).[FN2]
Lastly, defendants have not raised any argument regarding the second and fifth causes of action in the complaint alleging breach of contract. In view of this, defendants have abandoned any issue with respect thereto on this appeal (see Watts v Gines, 199 AD3d 1274, 1275 n [3d Dept 2021]).
Clark, J.P., Aarons, Reynolds Fitzgerald and Ceresia, JJ., concur.
ORDERED that the order is modified, on the law, without costs, by reversing so much thereof as denied that part of defendants' motion for summary judgment seeking dismissal of the third and sixth causes of action as it relates to those allegations sounding in medical malpractice; motion granted to that extent; and, as so modified, affirmed.

Footnotes

Footnote 1: Many of these ordered directives are not noted in the corresponding assessments, skilled/episodic nursing documentation or incident reports, and, as testified to by at least one nurse during her deposition, it was not possible to know whether something was completed if it was not documented. In a light most favorable to the nonmovant, this more than adequately raises a question of fact as to whether defendants were negligent in failing to comply with decedent's care plan (see Noga v Brothers of Mercy Nursing & Rehabilitation Ctr., 198 AD3d at 1279).

Footnote 2: Even if defendants met their summary judgment burden with respect to the first and fourth causes of action, plaintiff raised an issue of fact through the affidavit of his expert nurse, who was qualified to render an opinion on these claims (see e.g. Schwartz v Partridge, 179 AD3d 963, 965 [2d Dept 2020]; Novick v South Nassau Communities Hosp., 136 AD3d at 1001).