■ ESTHER NOVICK et al., Appellants, v SOUTH NASSAU COMMUNITIES HOSPITAL et al., Respondents. [26 NYS3d 182]—

In an action to recover damages for medical malpractice, violation of the Public Health Law, and wrongful death, the plaintiffs appeal from a judgment of the Supreme Court, Queens County (O'Donoghue, J.), entered June 4, 2013, which, upon an order of the same court entered February 14, 2013, granting the separate motions of the defendants for summary judgment dismissing the complaint insofar as asserted against each of them, is in favor of the defendants and against them, dismissing the complaint in its entirety.

Ordered that the judgment is affirmed, with one bill of costs.

The plaintiffs' decedent, Abraham Novick (hereinafter the decedent), was involved in a motor vehicle accident on August 31, 2006. He was 75 years old at the time. Several days after the accident, the decedent was unable to hold a spoon and complained of pain in his neck. His wife called an ambulance, and went with him in the ambulance to the defendant South Nassau Communities Hospital (hereinafter SNCH). The decedent was diagnosed with fractures in his cervical spine. On September 18, 2006, he underwent neurosurgery to repair a crushed vertebra in his neck. The decedent was treated by the defendant Dr. Andrew Goldstein while at SNCH. Goldstein had treated the decedent for a number of conditions prior to the accident at issue, including diabetes and complications arising therefrom. He testified at his deposition that the decedent's diabetes was "inadequately controlled."

The decedent developed a number of infections while at SNCH, including bacteremia, a respiratory infection, and

MRSA. He also developed a sacral decubitis ulcer, which had progressed to stage III by October 26, 2006. The decedent had a feeding tube inserted the day before.

The decedent was admitted to the defendant Long Beach Memorial Nursing Home, Inc., doing business as The Komanoff Center for Geriatric and Rehabilitative Medicine (hereinafter Komanoff) on November 3, 2006, with a diagnosis of a fractured vertebral column, with symptoms involving his digestive system. According to Komanoff's records, the decedent's sacral ulcer was stage III on November 8, 2006—a deep crater involving the fat layer. By November 15, 2006, it had progressed to stage IV—a crater involving muscle and/or bone, with necrotic tissue.

The decedent was transferred from Komanoff to the defendant Long Beach Medical Center on January 29, 2007, with diagnoses of urosepsis, proteus, clostridium difficile colitis, and sacral decubitus, grade 4. The decedent was started on intravenous fluids, antibiotics, and a decubitus ulcer protocol.

The decedent was transferred to nonparty Grandell Rehabilitation and Nursing Center on February 9, 2007. He died on February 12, 2007. The death certificate listed the causes of death as cardiorespiratory failure, diabetes mellitus, and hypertension.

The plaintiffs, on behalf of the decedent, thereafter commenced this action to recover damages for medical malpractice, violation of the Public Health Law, and wrongful death. The defendants all separately moved for summary judgment dismissing the complaint insofar as asserted against each of them.

In an order entered February 14, 2013, the Supreme Court, Queens County (O'Donoghue, J.), granted the motions. In a judgment entered June 4, 2013, the complaint was dismissed in its entirety.

"In order to establish liability for medical malpractice, a plaintiff must prove that the defendant deviated or departed from accepted community standards of practice and that such departure was a proximate cause of the plaintiff's injuries. On a motion for summary judgment, a defendant has the burden of establishing the absence of any departure from good and accepted medical practice or that the plaintiff was not injured thereby" (*Leavy v Merriam*, 133 AD3d 636, 637 [2015] [citations omitted]; *see Alvarez v Prospect Hosp.*, 68 NY2d 320 [1986]; *Nichols v Stamer*, 49 AD3d 832 [2008]). "Expert testimony is necessary to prove a deviation from accepted standards of medical care and to establish proximate cause"

(*Lyons v McCauley*, 252 AD2d 516, 517 [1998], citing *Koehler v Schwartz*, 48 NY2d 807 [1979]).

Here, the defendants all established their respective prima facie entitlement to judgment as a matter of law dismissing the medical malpractice and wrongful death causes of action insofar as asserted against them by submitting the affirmations of expert physicians, who stated, among other things, that the decedent's sacral ulcer was inevitable considering his neck fracture, his uncontrolled diabetes, his nutritional difficulties, and his aspirational pneumonia. The experts further noted that the sacral ulcer did not contribute to the decedent's death.

The affirmation of an expert physician submitted by the plaintiffs in opposition to the motions, failed to address these issues. The affidavit of a registered nurse, also submitted by the plaintiffs in opposition, was insufficient to raise a triable issue of fact, since the nurse was not a medical doctor and lacked the qualifications to render a medical opinion as to the relevant standard of care, and whether the defendants deviated from such standard (*see Elliot v Long Is. Home, Ltd.*, 12 AD3d 481, 482 [2004]). Therefore, the Supreme Court properly granted those branches of each of the defendants' motions which were for summary judgment dismissing the medical malpractice and wrongful death causes of action insofar as asserted against each of them.

The Supreme Court also properly granted those branches of each of the defendants' motions which were for summary judgment dismissing the Public Health Law cause of action insofar as asserted against each of them. Since Public Health Law § 2801-d only applies to nursing homes, it only applies to Komanoff in this case (*see generally Doe v Westfall Health Care Ctr.*, 303 AD2d 102, 109 [2002]; *Randone v State of New York*, 30 Misc 3d 335 [Ct Cl 2010]). The basis for liability under the statute "is neither deviation from accepted standards of medical practice nor breach of a duty of care. Rather, it contemplates injury to the patient caused by the deprivation of a right conferred by contract, statute, regulation, code or rule" (*Zeides v Hebrew Home for Aged at Riverdale*, 300 AD2d 178, 179 [2002]). Here, the affirmation of an expert physician established, prima facie, that Komanoff did not violate any contract, statute, regulation, code or rule, and that the decedent was not injured by any such violation.

In opposition, the plaintiffs submitted the affidavit of a registered nurse. However, the opinion of the nurse was conclusory, as it failed to identify any specific action or inaction

by Komanoff that violated a regulation and led to the decedent's injury (*see generally DiGeronimo v Fuchs*, 101 AD3d 933, 936 [2012]).

The plaintiffs' remaining contentions are without merit. Chambers, J.P., Hall, Austin and Barros, JJ., concur.