**Khenkina v Maimonides Med. Ctr.**

2024 NY Slip Op 31409(U)

April 19, 2024

Supreme Court, Kings County

Docket Number: Index No. 523893/17

Judge: Genine D. Edwards

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

At an IAS Term, Part MMESP6 of the
Supreme Court of the State of New York,
held in and for the County of Kings, at the
Courthouse, at 360 Adams Street, Brooklyn,
New York, on the 19th day of April 2024.

P R E S E N T:

HON. GENINE D. EDWARDS,
                    Justice.
----------------------------------------------------------------x
INESSA KHENKINA, as Administratrix of the
Estate of MIKHAIL LIVSHITZ, and INESSA
KHENKINA, Individually,

                              Plaintiffs,

              -against-

MAIMONIDES MEDICAL CENTER and
HAYM SOLOMON HOME FOR THE AGED, LLC,
d/b/a HAYM SOLOMON HOME FOR NURSING &
REHABILITATION,

                              Defendants.
----------------------------------------------------------------x

DECISION AND ORDER

Index No. 523893/17

Mot. Seq. No. 4

The following e-filed papers read herein:                NYSCEF Doc Nos.:

Notice of Motion, Affirmations, and Exhibits.............................78-101
Affirmations in Opposition, and Exhibits..................................104-107
Reply Affirmation.........................................................................108

In this action to recover damages for, inter alia, nursing-home malpractice, Haym

Solomon Home for the Aged, LLC, doing business as Haym Solomon Home for Nursing

& Rehabilitation ("defendant"), renewed, as permitted by the Court's order, dated May

22, 2023, its prior motion for summary judgment dismissing all claims of Inessa

Khenkina, individually and as the administratrix of the Estate of her late father, Mikhail

Livshitz (collectively, "plaintiff"), as against it. Plaintiff opposed the motion.

Codefendant Maimonides Medical Center ("MMC") did not respond to the motion.

[* 1]

## Background

From April 29, 2013 until his death on August 27, 2016, plaintiff's decedent, Mikhail Livshits (the "patient"), an octogenarian, continuously resided at defendant's nursing home (the "facility"), with intermittent hospitalizations at the non-movant MMC and at the non-party New York Community Hospital ("NYCH"). During his admission to defendant's facility, his medical history was significant for dementia, pulmonary disease, congestive heart failure, atrial fibrillation, hypertension, coronary artery disease, and a permanent pacemaker. He required assistance with bed mobility, transfers, dressing, eating, toilet use, walking, and personal hygiene.

During his residence in defendant's facility, the patient suffered several medical emergencies for which he was transferred to MMC (and, where appropriate, to NYCH) for treatment. During his July 2015 hospitalization at MMC for hyponatremia and infection, the patient fell, sustaining an acute (which subsequently progressed to a subacute or chronic) subdural hematoma.[1] Three months later, on October 1, 2015, he was re-hospitalized at MMC for a new "acute on subacute" subdural hematoma which was in addition to his pre-existing subacute (or chronic) subdural hematoma. The newly discovered subdural hematoma was described as being of a "mixed attenuation" or mixed density, thus suggesting repeated episodes of acute bleeding that could have been brought on by even the slightest of trauma. Defendant's and MMC's respective medical records

---

[1] "Subdural hematomas that persist beyond the 21-day period are considered chronic subdural hematomas, which is one of the most common traumatic conditions in the elderly population." Defendant's expert affirmation.

2

[* 2]

for the patient did not reflect any then-recent traumatic event at either facility, with the aforementioned July 2015 episode at MMC representing the patient's then-most recent fall.

Upon readmission to defendant's facility on October 5, 2015, the patient was noted to have been then suffering from three bedsores: (1) a Stage I sacral ulcer (5 cm x 8 cm); (2) a Stage I right heel ulcer (3 cm x 3 cm); and (3) unstageable left heel ulcer (3 cm x 1 cm). Wound-care treatment was promptly implemented, with some success.

Six months later, on February 15, 2016, while still residing at defendant's facility, the patient was found naked (other than wearing a diaper) in a sitting position on his roommate's floor mat.[2] He exhibited a laceration (2 cm x 3 cm) on his right occiput (back of the head) with minimal bleeding. He was alert but confused. After a prompt transfer to MMC for a radiology study, which revealed no acute findings, he was returned to defendant's facility the same day.

In response to the patient's February 15, 2016 fall at defendant's facility, its personnel intensified the patient's fall-protection measures. Nonetheless, approximately 1-½ months later, on April 3, 2016, the patient was once again found lying on his back on the floor mat. Immediately before his fall that day, he had removed his bed alarm and once again got out of bed unassisted. An on-site physical examination revealed that he had suffered no injuries from his fall. Defendant's earlier fall-protection measures for the patient were enhanced, including a replacement of his bed alarm. Two days later, on

---

[2] The patient shared a room with another resident during his stay at defendant's facility.

3

[* 3]

April 5, 2016, the patient was caught trying to remove his bed alarm in yet another attempt to get out of bed unassisted.[3]

Four months later, on August 8, 2016, the patient was hospitalized at NYCH for altered mental state, mutism, and inability to sit straight in his wheelchair. At NYCH, he was diagnosed with hyponatremia and rhabdomyolysis (a breakdown of muscle tissue with ensuing kidney damage). A head CT scan, performed at NYCH, revealed that the patient had: (1) a bilateral iso-dense subdural hematoma likely to be subacute in the bilateral parietal lobe superior lesions, which were superimposed on severe chronic central and peripheral atrophy; and (2) chronic infarcts. After the patient failed a swallow study, he was equipped with a PEG tube and was discharged from NYCH to defendant's facility on August 19, 2016.

Upon his readmission to defendant's facility on August 19, 2016, the patient was discovered to have been suffering from gangrene in his left leg. The patient was immediately returned to NYCH where, on physical examination, he exhibited an acute left leg discoloration from below his left knee to his left toes. An ultrasound study of the patient's left leg revealed a complete obstruction that was proximal to his left popliteal artery. The following day, August 20, 2016, the patient was returned to defendant's facility from NYCH without surgical intervention. Following his readmission to

---

[3] Plaintiff's allegations, advanced for the first time in opposition to defendant's motion, that the patient fell at defendant's facility on August 7, 2016 (albeit without apparent injuries) and again on August 13, 2016 (although defendant's records did not so reflect), were untimely and could not be considered. *See Campbell v. Ditmas Park Rehabilitation & Care Ctr., LLC,* ___ A.D.3d ___, ___ N.Y.S.3d ___, 2024 N.Y. Slip Op. 01697 (2d Dept. 2024).

4

[* 4]

defendant's facility, the patient was placed on the hospice-care floor where he passed away on August 27, 2016, at the age of 86.

On December 12, 2017, the patient's daughter, individually and as the administratrix of his Estate, commenced this action against defendant (among others). On April 13, 2018, defendant joined issue. After discovery was completed and a note of issue was filed, defendant timely moved for summary judgment. Following the Court's denial of defendant's motion without prejudice to resubmit, defendant timely renewed its motion for summary judgment. On November 3, 2023, defendant's renewed motion was marked submitted. The well-established standard of summary judgment is omitted from this decision and order in the interest of brevity.

## Discussion

Defendant established its prima facie entitlement to judgment as a matter of law via, among other submissions, an affirmation of Mark Lachs, M.D., M.P.H. ("Dr. Lachs"), a New York State-licensed physician who was board-certified in internal medicine with a sub-certification in geriatrics.[4] Dr. Lachs opined, on the subject of the patient's falls, that: (1) "[defendant] did not depart, err, or deviate from good and accepted standards of care or with respect to fall prevention and precautions in the treatment and care of the [patient] during his admission [at defendant's facility]"; (2) "[defendant's] medical and nursing staff . . . did not cause or contribute to

---

[4] Dr. Lachs' Expert Affirmation, dated July 21, 2023.

5

[* 5]

any of the [alleged] injuries"; and (3) "all care and treatment rendered to [the patient] conformed to all applicable statutes, rules and regulations."[5] More specifically, Dr. Lachs opined that the patient's medical records at both defendant's facility and at MMC refuted plaintiff's contention that the patient fell at defendant's facility on any/all of the following dates: June 11, 2015, June 26, 2015, and/or August 3, 2015.[6] Rather, as Dr. Lachs emphasized:

> "*[T]he only documented fall that resulted in any notable injury to [the patient] occurred on July 24, 2015 during his hospitalization at [MMC]. The fall resulted in an acute subdural hematoma* over the right frontal convexity with a mild mass effect on the underlying parenchyma. Due to [the patient's] advanced age and global decline, with [multiple comorbidities], [the patient] was unable to return to baseline, which was already compromised prior to [such fall]. *[The] July 24, 2015 fall at [MMC] was a catalytic event that initiated a geriatric cascade into rapid global decline leading to [his] death.*"[7]

Regarding the patient's subsequent falls at defendant's facility, Dr. Lachs opined that "none of [those] falls led to a serious injury and [, equally important,] that all [of them] were unavoidable as a result of [the patient's persistent] noncompliance."[8] As Dr. Lachs explained, "[defendant] exhausted all efforts to ensure [the patient's] safety and prevent his falls while still maintaining his dignity" (*i.e.*, avoiding the placement of the patient in restraints).[9]

---

[5] *Id.*, ¶ 43.

[6] *Id.*, ¶¶ 46-47.

[7] *Id.*, ¶ 48 (emphasis added).

[8] *Id.*, ¶ 51.

[9] *Id.*, ¶ 51.

[* 6]

Next, Dr. Lachs opined, on the subject of the patient's bedsores, that their development was "the unavoidable result of [his] progressive illnesses, such as dementia, diabetes, hypertension, history of strokes, and declining mobility. [In Dr. Lachs's opinion, any] development of pressure ulcers or pressure injuries was the consequence of [the patient's] debility caused by his multiple longstanding comorbidities."[10]

Finally, Dr. Lachs addressed (and rebutted in detail) plaintiff's scattered contentions that could be distilled into the categories of: (1) nutrition and hydration; (2) alleged violations of the Public Health Law; (3) punitive damages and gross negligence; and (4) wrongful death.[11]

Dr. Lachs's affirmation, together with defendant's other submissions, established its prima facie entitlement to judgment as a matter of law. *See Campbell v. Ditmas Park Rehabilitation & Care Ctr., LLC*, ___ A.D.3d ___, ___ N.Y.S.3d ___, 2024 N.Y. Slip Op. 01697 (2d Dept. 2024); *Van DeVeerdonk v. North Westchester Restorative Therapy & Nursing Ctr.*, 223 A.D.3d 702, 204 N.Y.S.3d 132 (2d Dept. 2024); *Barnaman v. Bishop Hucles Episcopal Nursing Home*, 213 A.D.3d 896, 184 N.Y.S.3d 800 (2d Dept. 2023); *Rosario v. Our Lady of Consolation Nursing & Rehabilitation Care Ctr.*, 186 A.D.3d 1426, 128 N.Y.S.3d 906 (2d Dept. 2020).

In opposition to defendant's prima facie showing, plaintiff's experts – a New York State-licensed physician who was board-certified in internal medicine with a sub-

---

[10] *Id.*, ¶ 54.
[11] *Id.*, ¶¶ 52, 55, 57-61.

7

[* 7]

certification in geriatrics ("plaintiff's geriatrician"), and Charlotte Sheppard, a board-certified registered nurse ("Nurse Sheppard" and collectively, "plaintiff's experts")[12] – failed to raise a triable issue of fact *on the element of proximate cause* as to any of plaintiff's causes of action against defendant. Plaintiff's experts' respective opinions were speculative, conclusory, and nonresponsive to the specific assertions of defendant's expert, Dr. Lachs, in that the patient's claimed injuries: (1) were either minor/inconsequential or were not proximately caused by defendant's alleged acts/omissions in the instance of the patient's falls; or (2) were clinically unavoidable *in the instance of the patient's bedsores. See Campbell*, ___ A.D.3d ___, ___ N.Y.S.3d ___, 2024 N.Y. Slip Op. 01697; *Van DeVeerdonk v. North Westchester Restorative Therapy & Nursing Ctr.*, 223 A.D.3d 702, 204 N.Y.S.3d 132 (2d Dept. 2024), *aff'g* 2019 WL 13079049 (Sup. Ct., Westchester County 2019); *Russell v. River Manor Corp.*, 216 A.D.3d 827, 188 N.Y.S.3d 191 (2d Dept. 2023); *Barnaman v. Bishop Hucles Episcopal Nursing Home*, 213 A.D.3d 896, 184 N.Y.S.3d 800 (2d Dept. 2023); *Losak v. St. James Rehabilitation & Healthcare Ctr.*, 199 A.D.3d 671, 156 N.Y.S.3d 406 (2d Dept. 2021), *rev'g* 2018 WL 11351138 (Sup. Ct., Suffolk County 2018); *Lowe v. Japal*, 170 A.D.3d 701, 95 N.Y.S.3d 363 (2d Dept. 2019); *Ciccotto v. Fulton Commons Care Ctr., Inc.*, 149 A.D.3d 1030, 53 N.Y.S.3d 338 (2d Dept. 2017); *Novick v. South Nassau Communities Hosp.*, 136 A.D.3d 999, 26 N.Y.S.3d 182 (2d Dept. 2016); *DePaso*

---

[12] Expert Affirmation in Opposition to Defendant Haym Solomon['s Motion], dated September 22, 2023 (NYSCEF Doc No. 105); Nursing Affirmation in Opposition to Defendant Haym Solomon['s Motion], dated September 22, 203.

8

[* 8]

*v. Sarah Neuman Ctr. for Healthcare & Rehabilitation,* 119 A.D.3d 727, 989 N.Y.S.2d 310 (2d Dept. 2014). *See also Topel v. Long Is. Jewish Med. Ctr.,* 55 N.Y.2d 682, 446 N.Y.S.2d 932 (1981).

Further, Nurse Sheppard was not a medical doctor and thus was not qualified to opine, with respect to allegations sounding in medical malpractice/wrongful death and pertaining to medical determinations as to what a physician should or should not have done, "as to whether any deviation was a proximate cause of the injuries." *Boltyansky v. New York Community Hosp.,* 175 A.D.3d 1478, 108 N.Y.S.3d 188 (2d Dept. 2019); *see Novick,* 136 A.D.3d 999, 26 N.Y.S.3d 182; *Elliot v. Long Is. Home, Ltd.,* 12 A.D.3d 481, 784 N.Y.S.2d 615 (2d Dept. 2004). *See also Zak v. Brookhaven Mem. Hosp. Med. Ctr.,* 54 A.D.3d 852, 863 N.Y.S.2d 821 (2d Dept. 2008).

Plaintiff's request for punitive damages was without merit. *See Valensi v. Park Ave. Operating Co., LLC,* 169 A.D.3d 960, 94 N.Y.S.3d 311 (2d Dept. 2019).

The Court considered plaintiff's remaining contentions and found them unavailing.

[* 9]

## Conclusion

Based upon the foregoing, it is

ORDERED that the renewed motion of defendant Haym Solomon Home for the

Aged, LLC, doing business as Haym Solomon Home for Nursing & Rehabilitation, is

granted, and the complaint is dismissed as against it without costs or disbursements, and

it is further

ORDERED that the clerk is directed to enter judgment in favor of defendant

Haym Solomon Home for the Aged, LLC, doing business as Haym Solomon Home for

Nursing & Rehabilitation, and it is further

ORDERED that the action is severed and continued as against Maimonides

Medical Center, and it is further

ORDERED that to reflect the dismissal of defendant Haym Solomon Home for the

Aged, LLC, doing business as Haym Solomon Home for Nursing & Rehabilitation, from

this action, the caption is amended to read as follows:

-----------------------------------------------------------------X
INESSA KHENKINA, as Administratrix of the
Estate of MIKHAIL LIVSHITZ, and INESSA
KHENKINA, Individually,
                           Plaintiffs,

      -against-

MAIMONIDES MEDICAL CENTER,

                          Defendant.
-----------------------------------------------------------------X

      ; and it is further

10

[* 10]

ORDERED that defendant's counsel shall electronically serve a copy of this decision and order with notice of entry on the respective counsel to plaintiff and MMC, and to electronically file an affidavit of service thereof with the Kings County Clerk, and it is further

ORDERED that the remaining parties are reminded of their scheduled virtual appearance for a pretrial conference in the Medical Malpractice Trial Readiness Part on June 3, 2024, at 11:00 a.m.

This constitutes the Decision and Order of the Court.

ENTER,

Genine D. Edwards
J. S. C.

[* 11]